**ORAL ARGUMENT HAS NOT BEEN SCHEDULED**

# In the United States Court of Appeals
# for the District of Columbia Circuit

### No. 16-1092
_____

DELAWARE RIVERKEEPER NETWORK, *ET AL.*,
*Petitioners*,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.
_____

ON PETITION FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION
_____

## BRIEF OF RESPONDENT
## FEDERAL ENERGY REGULATORY COMMISSION
_____

Max Minzner
General Counsel

Robert H. Solomon
Solicitor

Holly E. Cafer
Senior Attorney

Lisa B. Luftig
Attorney

For Respondent
Federal Energy Regulatory
  Commission
Washington, D.C. 20426

August 9, 2016

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to Circuit Rule 28(a)(1), Respondent submits:

**A.    Parties:**

To counsel's knowledge, the parties before this Court and before the Federal Energy Regulatory Commission in the underlying agency proceeding are as listed in the brief of Petitioners.

**B.    Rulings Under Review:**

1.    Order Issuing Certificate and Approving Abandonment, *Transcontinental Gas Pipe Line Co., LLC*, FERC Docket No. CP13-551-000, 149 FERC ¶ 61,258 (Dec. 18, 2014) ("Certificate Order"), R. 406, JA ___; and

2.    Order Denying Rehearing, *Transcontinental Gas Pipe Line Co., LLC*, FERC Docket No. CP13-551-001, 154 FERC ¶ 61,166 (Mar. 3, 2016) ("Rehearing Order"), R. 569, JA ___.

**C.    Related Cases:**

To counsel's knowledge, there are no related cases other than those cases set forth in Petitioners' brief.   On August 8, 2016, the U.S. Court of Appeals for the Third Circuit rejected Petitioners' challenges to the state water quality certifications issued by New Jersey and Pennsylvania for the facilities at issue in this case.  *See Del. Riverkeeper Network v. Pa. Dep't of Envtl. Protection*, Nos. 15-2122, *et al.* (3d Cir. Aug. 8, 2016).

/s/ *Lisa B. Luftig*
Lisa B. Luftig
Attorney

August 9, 2016

i

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUES.................................................................1

STATUTORY AND REGULATORY PROVISIONS ................................2

COUNTER-STATEMENT OF JURISDICTION ....................................2

INTRODUCTION ....................................................................................3

STATEMENT OF THE FACTS ...............................................................5

I.    STATUTORY AND REGULATORY BACKGROUND ........................5

    A.    Natural Gas Act ..........................................................................5

    B.    Clean Water Act ..........................................................................6

    C.    National Environmental Policy Act .................................................8

II.    FACTUAL BACKGROUND.............................................................. 10

    A.    The Leidy Project ...................................................................... 10

    B.    The Commission's Environmental Review ................................. 10

    C.    The Challenged Orders.............................................................. 11

        1.    The Certificate Order ......................................................... 11

        2.    Rehearing Order ................................................................ 13

    D.    Motions For Stay ....................................................................... 14

SUMMARY OF ARGUMENT ................................................................ 15

ARGUMENT ......................................................................................... 18

## TABLE OF CONTENTS

**PAGE**

I.   THE COURT LACKS STATUTORY JURISDICTION OVER
     COMMISSION STAFF LETTER ORDERS AUTHORIZING
     PRE-CONSTRUCTION ACTIVITIES.................................................... 18

II.  THE COMMISSION'S CONDITIONAL APPROVAL OF
     THE LEIDY PROJECT COMPLIES WITH THE
     CLEAN WATER ACT......................................................................... 22

     A.   Standard Of Review ................................................................ 23

     B.   The Certificate Order Requires The Pipeline's Compliance With
          The Clean Water Act ............................................................... 24

III. THE COMMISSION FULLY SATIFIED ITS NEPA
     OBLIGATIONS ...................................................................................... 33

     A.   Standard Of Review ................................................................ 33

     B.   The Commission's Wetlands Analysis Fully Complied
          With NEPA ............................................................................. 34

     C.   The Commission Satisfied Its Obligations Under NEPA To
          Analyze Gas Flow Velocity Data............................................ 40

          1.   The Commission's Findings Are Based On Substantial
               Evidence .......................................................................... 40

          2.   The Commission's Findings Are Not Inconsistent With
               Its Treatment Of Other Pipelines ...................................... 43

CONCLUSION……........................................................................................... 45

iii

## TABLE OF AUTHORITIES

**COURT CASES:**                                                    **PAGE**

*Ala. Rivers Alliance v. FERC*,
    325 F.3d 290 (D.C. Cir. 2003) ................................................................. 23

*Alcoa Power Generating Inc. v. FERC*,
    643 F.3d 963 (D.C. Cir. 2011) ......................................................... 23, 25

*ANR Pipeline Co. v. FERC*,
    876 F.2d 124 (D.C. Cir. 1989) ......................................................... 24, 31

*American Rivers v. FERC*,
    201 F.3d 1186 (9th Cir. 1999) ............................................................... 37

*ASARCO, Inc. v. FERC*,
    777 F.2d 764 (D.C. Cir. 1985) ............................................................... 19

*Atl. Refining Co. v. Pub. Serv. Comm'n of N.Y.*,
    360 U.S. 378 (1959) ................................................................................. 6

*Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*,
    462 U.S. 87 (1983) ............................................................................ 8, 33

*Boivin v. U.S. Airways, Inc.*,
    446 F.3d 148 (D.C. Cir. 2006) ............................................................... 21

*Chevron U.S.A., Inc. v. Natural Res. Def. Council*,
    467 U.S. 837 (1984) ............................................................................... 23

*City of Arlington v. FCC*,
    133 S. Ct. 1863 (2013) ........................................................................... 23

*City of Fall River v. FERC*,
    507 F.3d 1 (1st Cir. 2007) ...................................................................... 27

_____

***\*Cases chiefly relied upon are marked with an asterisk.***

iv

# TABLE OF AUTHORITIES

**COURT CASES:**                                                              **PAGE**

*City of Grapevine v. Dep't of Transp.*,
    17 F.3d 1502 (D.C. Cir. 1994)............................................................ 29, 30

*City of Tacoma v. FERC*,
    460 F.3d 53 (D.C. Cir. 2006)............................................................ 28, 32

*Coal. on Sensible Transp., Inc. v. Dole*,
    826 F.2d 60 (D.C. Cir. 1987)................................................................ 39

*Columbia Gas Transmission Corp. v. FERC*,
    477 F.3d 739 (D.C. Cir. 2007).............................................................. 19

*Consol. Edison Co. of New York Inc. v. FERC*,
    347 F.3d 964 (D.C. Cir. 2003)............................................................... 32

*Decker v. Nw. Envtl. Def. Ctr.*,
    133 S. Ct. 1326, 1335 (2013)................................................................ 22

*Del. Dep't of Natural Res. and Envtl. Control v. FERC*,
    558 F.3d 575 (D.C. Cir. 2009)................................................... 26, 27, 31

*Del. Riverkeeper Network*,
    No. 15-1052 (D.C. Cir. Mar. 19, 2015)................................................. 15

*Del. Riverkeeper Network v. Pa. Dep't of Envtl. Protection*,
    Nos. 15-2122, *et al.* (3d Cir. Aug. 8, 2016)........................................ 7, 21

*Dep't of Transp. v. Public Citizen*,
    541 U.S. 752 (2004).................................................................................8

*Dominion Transmission, Inc. v. Summers*,
    723 F.3d 238 (D.C. Cir. 2013).................................................................6

*EarthReports, Inc. v. FERC*,
    No. 15-1127 (D.C. Cir. July 15, 2016).............................................. 36, 38

## TABLE OF AUTHORITIES

**COURT CASES:**                                                    **PAGE**

*FERC v. Elec. Power Supply Ass'n*,
       136 S. Ct. 760 (2016)..............................................................41

*Granholm ex rel. Michigan Dep't of Nat. Res. v. FERC*,
       180 F.3d 278 (D.C. Cir. 1999)..................................................18

*Gunpowder Riverkeeper v. FERC*,
       807 F.3d 267 (D.C. Cir. 2015).......................... 7, 22, 28, 29, 32, 33

*Half Moon Bay Fishermans' Mktg. Ass'n v. Carlucci*,
       857 F.2d 505 (9th Cir. 1988) ...................................................38

*Hughes River Watershed Conservancy v. Johnson*,
       165 F.3d 283 (4th Cir. 1999) ...................................................36

*Keating v. FERC*,
       927 F.2d 616 (D.C. Cir. 1991)..................................................25

*Knox v. Service Employees Int'l,*
       132 S. Ct. 2277, 2287 (2012)...................................................22

*Marsh v. Or. Natural Res. Council*,
       490 U.S. 360 (1989).................................................................34

*Minisink Residents for Envtl. Pres. and Safety v. FERC*,
       762 F.3d 97 (D.C. Cir. 2014)............................ 8, 34, 37, 43, 45

*\*Murray Energy Corp. v. FERC*,
       629 F.3d 231 (D.C. Cir. 2011 ............................................ 3, 19

*\*Myersville Citizens for a Rural Cmty., Inc. v. FERC*,
       783 F.3d 1301 (D.C. Cir. 2015)..................... 23, 26, 31, 33, 34, 37, 41, 43

*NAACP v. FPC*,
       425 U.S. 662 (1976)...................................................................5

# TABLE OF AUTHORITIES

**COURT CASES:**                                            **PAGE**

*Nat'l Comm. for the New River, Inc. v. FERC*,
    433 F.3d 830 (D.C. Cir. 2005)............................................................ 3, 20

*Nat'l Comm. for the New River, Inc. v. FERC*,
    373 F.3d 1323 (D.C. Cir. 2004)............................................ 20, 33, 34, 41

*Natural Res. Def. Council, Inc. v. Hodel*,
    865 F.2d 288 (D.C. Cir. 1988).................................................... 34

*Nevada v. Dep't of Energy*,
    457 F.3d 78 (D.C. Cir. 2006)............................................. 33, 34

*NRG Power Marketing, LLC v. FERC*,
    718 F.3d 947 (D.C. Cir. 2013).................................................... 43

*N. Slope Borough v. Andrus*,
    642 F.2d 589 (D.C. Cir. 1980).................................................... 34

*Oregon v. FERC*,
    636 F.3d 1203 (9th Cir. 2011) ............................................... 27

*Pub. Utils. Comm'n of Cal. v. FERC*,
    900 F.2d 269 (D.C. Cir. 1990)......................................... 5, 26, 31

*Pub. Util. Dist. No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*,
    511 U.S. 700 (1994)..................................................................7

*Reynolds Metals Co. v. FERC*,
    777 F.2d 760 (D.C. Cir. 1985)................................................ 15

*Robertson v. Methow Valley Citizens Council*,
    490 U.S. 332 (1989)....................................................... 8, 34, 35

*S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*,
    547 U.S. 370 (2006)..................................................................7

# TABLE OF AUTHORITIES

**COURT CASES:**                                                                                **PAGE**

*Sierra Club v. FERC*,
    No. 14-1249 (D.C. Cir. June 28, 2016) .............................................. 9, 19

*So. Cal. Edison Co. v. FERC*,
    805 F.2d 1068 (D.C. Cir. 1986)................................................................ 44

*Taxpayers of Mich. Against Casinos v. Norton*,
    433 F.3d 852 (D.C. Cir. 2006)....................................................................9

*Theodore Roosevelt Conservation P'ship v. Salazar*,
    616 F.3d 497 (D.C. Cir. 2010)....................................................................8

*Theodore Roosevelt Conservation P'ship v. Salazar*,
    661 F.3d 66 (D.C. Cir. 2011)............................................................. 22, 34

*U.S. Dep't of Interior v. FERC*,
    952 F.2d 538 (D.C. Cir. 1992)................................................................. 38

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
    435 U.S. 519 (1978)................................................................................. 33

*Wildearth Guardians v. Jewell*,
    738 F.3d 298 (D.C. Cir. 2013)................................................................. 37

*Wisc. Valley Improvement Co. v. FERC*,
    236 F.3d 738 (D.C. Cir. 2011)................................................................. 41

**ADMINISTRATIVE CASES:**

*AES Sparrows Point LNG, LLC*,
    129 FERC ¶ 61,245 (2009)................................................................ 26, 30

*Broadwater Energy, LLC*,
    124 FERC ¶ 61,225 (2008)........................................................ 26, 27, 30

# TABLE OF AUTHORITIES

**ADMINISTRATIVE CASES:**                                                                                    **PAGE**

*Certification of New Interstate Natural Gas Pipeline Facilities*,
    88 FERC ¶ 61,227 (1999), *clarified*,
    90 FERC ¶ 61,128, *further clarified*,
    92 FERC ¶ 61,094 (2000)................................................................. 12

*Columbia Gas Transmission, LLC*,
    149 FERC ¶ 61,255 (2014)............................................................ 44

*Crown Landing, LLC*,
    117 FERC ¶ 61,209 (2006),...................................................... 27, 32

*Georgia Strait Crossing Pipeline LP*,
    108 FERC ¶ 61,053 (2004)............................................................ 30

*Millennium Pipeline Co., L.L.C.*,
    142 FERC ¶ 61,077 (2013)............................................................ 44

*Tennessee Gas Pipeline, Co.*,
    139 FERC ¶ 61,161 (2012)............................................................ 44

*\*Transcontinental Pipe Line Co., LLC*,
    149 FERC ¶ 61,258 (2014).........................3-5, 7, 10-13, 23-25, 35-41, 44

*\*Transcontinental Gas Pipe Line Co., LLC*,
    154 FERC ¶ 61,166 (2016).............................4, 5, 7, 13, 14, 22-32, 35-43

**STATUTES:**

Administrative Procedure Act

    5 U.S.C. § 706(2)(A) ................................................................... 33

Clean Water Act

    33 U.S.C. § 1341.................................................................. 2, 6, 25, 28

# TABLE OF AUTHORITIES

**STATUTES:**                                                              **PAGE**

National Environmental Procedural Act

    42 U.S.C. § 4321 ................................................................8

Natural Gas Act

    15 U.S.C. §§ 717(b), (c) ................................................5

    15 U.S.C. § 717f(c) ........................................................5

    15 U.S.C. § 717f(e) ............................................. 6, 24, 31

    15 U.S.C. §§ 717r(a), (b) ................................. 3, 18, 21, 28, 33

**REGULATIONS:**

    18 C.F.R. § 375.301(a) ..................................... 19

    18 C.F.R. § 375.308(x) ..................................... 14

    18 C.F.R. § 385.713 ......................................... 19

    18 C.F.R. § 385.1902(a) ................................... 19

    40 C.F.R. § 1501.4(e) .......................................9

    40 C.F.R. § 1508.9(b) .......................................9

    40 C.F.R. § 1508.13 ..................................... 9, 10

# GLOSSARY

| | |
|---|---|
| Br. | Petitioners' opening brief |
| Certificate Order | *Transcontinental Gas Pipe Line Co., LLC*, FERC Docket No. CP13-551-000, 149 FERC ¶ 61,258 (Dec. 18, 2014), R. 406, JA ___ |
| Commission or FERC | Federal Energy Regulatory Commission |
| Environmental Assessment | Environmental Assessment report issued on August 11, 2014 by FERC for Transcontinental Gas Pipe Line Co.'s application to construct and operate the Leidy Southeast Expansion project, R. 359, JA ___ |
| Leidy Project or Project | Transco's proposal to construct and operate approximately 30 miles of new pipeline loop, consisting of four pipeline loop segments, and to add 71,900 horsepower of compression at four compressor stations, located in Pennsylvania and New Jersey |
| NEPA | National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq.* |
| NGA | Natural Gas Act, 15 U.S.C. §§ 717, *et seq.* |
| P | The internal paragraph number within a FERC order |
| Rehearing Order | *Transcontinental Gas Pipe Line Co., LLC*, FERC Docket No. CP13-551-001, 154 FERC ¶ 61,166 (Mar. 3, 2016), R. 569, JA ___ |
| Riverkeeper | Petitioners Delaware Riverkeeper Network and Maya van Rossum, the Delaware Riverkeeper |
| Transco | Intervenor, Transcontinental Gas Pipe Line Co., owner and operator of the Leidy Project |

# In the United States Court of Appeals
## for the District of Columbia Circuit

No. 16-1092

_____

DELAWARE RIVERKEEPER NETWORK, *ET AL.*,
*Petitioners*,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

_____

ON PETITION FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

_____

## BRIEF OF RESPONDENT
## FEDERAL ENERGY REGULATORY COMMISSION

_____

## STATEMENT OF THE ISSUES

In 2014, the Federal Energy Regulatory Commission ("Commission" or "FERC"), after conducting an extensive environmental review, authorized Transcontinental Pipe Line Company, LLC ("Transco") to expand existing natural gas pipeline facilities in order to transport an additional 525,000 dekatherms of natural gas per day from two existing interconnections in Pennsylvania to various delivery points on Transco's mainline ("Leidy Project" or "Project"). The questions presented on appeal are:

1.      Does this Court have jurisdiction to hear challenges by Petitioner Delaware Riverkeeper Network ("Riverkeeper") to individual delegated orders granting Transco's requests to begin specified pre-construction activities, where Riverkeeper has not sought agency rehearing or judicial review of those individual decisions?

2.      Did the Commission reasonably determine that the Clean Water Act, 33 U.S.C. § 1341, allows the Commission to conditionally authorize Transco's Project, subject to Transco's later receipt of Clean Water Act certifications from the States of Pennsylvania and New Jersey?

3.      Did the Commission's environmental analysis of the Leidy Project – in particular, its study of wetlands impacts and gas flow velocity – satisfy the requirements of the National Environmental Policy Act ("NEPA"), and adequately support approval of the project under the Natural Gas Act?

## STATUTORY AND REGULATORY PROVISIONS

Pertinent statutes and regulations are contained in the Addendum.

## COUNTER-STATEMENT OF JURISDICTION

This Court does not have jurisdiction to hear Riverkeeper's claims that individual delegated orders, granting Transco's requests to perform limited pre-construction activities, were improperly issued prior to obtaining state water quality certifications in violation of the Clean Water Act. *See* Br. 25-34.

Riverkeeper did not satisfy the statutory prerequisite for judicial review (*see* 15 U.S.C. § 717r) of those individual orders because it failed to seek agency rehearing and judicial review of those orders; therefore, they are not properly before the Court.  *See infra* Part I of the Argument; *see also Murray Energy Corp. v. FERC*, 629 F.3d 231, 235 (D.C. Cir. 2011) (addressing appeal of delegated letter order and Commission rehearing order authorizing construction); *Nat'l Comm. for the New River, Inc. v. FERC*, 433 F.3d 830 (D.C. Cir. 2005) (same).

## INTRODUCTION

This case involves Commission orders authorizing the expansion of capacity at existing facilities and authorization of limited new facilities to meet the increased demand for natural gas demonstrated by full contractual commitments for 525,000 decatherms of capacity created by the Leidy Project.  *See infra* p. 9 (describing Project).  The challenged orders authorize the Project owner, Transco, upon satisfying necessary environmental conditions in the Commission orders, to construct and operate additional facilities at existing sites in Pennsylvania and New Jersey.  Specifically, in 2014, the Commission authorized Transco to construct and operate approximately 30 miles of new 42-inch-diameter pipeline loop and add a total of 71,900 horsepower at four existing compressor stations.  *See Transcontinental Pipe Line Co., LLC*, 149 FERC ¶ 61,258, PP 4-5 (2014)

3

("Certificate Order"), R. 406, JA ___-___, *reh'g denied*, 154 FERC ¶ 61,166

(2016) ("Rehearing Order"), R. 569, JA ___.**1**

Before the Commission, and this Court in an emergency motion for stay

pending judicial review (D.C. Cir. No. 15-1052, denied March 19, 2015),

Delaware Riverkeeper urged that the Commission improperly segmented its

environmental analysis, or otherwise did not correctly conduct a cumulative

impacts analysis, in violation of the National Environmental Policy Act.

Notwithstanding this strong focus of its earlier protests (*see* Certificate Order PP

42-68, JA ___-___ (addressing segmentation), Rehearing Order PP 10-24, JA ___-

___ (same)), Delaware Riverkeeper does not raise these issues in its opening brief

and, therefore, they are waived.  Fed. Rule of App. P. 28(a)(8)(e).

Instead, Riverkeeper now makes two central claims.  First, it contends that

the Commission orders violate the Clean Water Act because the Certificate Order

was issued subject to the condition of (and, thus, prior to) Transco obtaining Clean

Water Act permits necessary for construction of the Project.  Second, Riverkeeper

contends that the Commission did not satisfy its obligations under the National

Environmental Policy Act with respect to evaluation of wetlands and gas velocity.

In an agency proceeding extending over a year and resulting in a detailed 221-page

---

**1** "R." refers to a record item.  "JA" refers to the Joint Appendix page
number.  "P" refers to the internal paragraph number within a FERC order.  "Br."
refers to Petitioners' opening brief.

Environmental Assessment, the Commission thoroughly evaluated the Leidy Project's potential impacts and alternatives. Ultimately, the Commission addressed and rejected Riverkeeper's arguments. For the Commission's discussion of the Clean Water Act issue, *see* Certificate Order P 77, JA ___; Rehearing Order PP 41-47, JA ___-____. For a discussion of wetlands issues, *see* Certificate Order PP 76-79, JA ___-___; Rehearing Order PP 36-38, JA ___. For a discussion of gas flow velocity issues, *see* Certificate Order PP 25-32, JA ___-___; Rehearing Order PP 28-35, JA ___-___.

## STATEMENT OF FACTS

## I.    STATUTORY AND REGULATORY BACKGROUND

### A.    Natural Gas Act

The principal purpose of the Natural Gas Act ("NGA") is "to encourage the orderly development of plentiful supplies of . . . natural gas at reasonable prices." *Pub. Utils. Comm'n of Cal. v. FERC*, 900 F.2d 269, 281 (D.C. Cir. 1990) (quoting *NAACP v. FPC*, 425 U.S. 662, 670 (1976)). To that end, NGA sections 1(b) and (c) grant the Commission jurisdiction over the transportation and wholesale sale of natural gas in interstate commerce. 15 U.S.C. §§ 717(b), (c). Before a company may construct a facility that transports natural gas in interstate commerce, it must obtain from the Commission a "certificate of public convenience and necessity" under NGA section 7(c), 15 U.S.C. § 717f(c), and "comply with all other federal,

state, and local regulations not preempted by the NGA." *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 240 (D.C. Cir. 2013) (reviewing state failure to act under the Clean Air Act).

Under Natural Gas Act section 7(e), the Commission shall issue a certificate to any qualified applicant upon finding that the proposed construction and operation of the pipeline facility "is or will be required by the present or future public convenience and necessity." 15 U.S.C. § 717f(e). The Act empowers the Commission to "attach to the issuance of the certificate . . . such reasonable terms and conditions as the public convenience and necessity may require." *Id.*; *see, e.g., Atl. Refining Co. v. Pub. Serv. Comm'n of N.Y.*, 360 U.S. 378, 391-92 (1959) (noting the Commission's discretion to attach conditions to certificates as necessary).

## B.     Clean Water Act

Section 401(a)(1) of the Clean Water Act requires that any applicant for a federal license or permit for an activity that "may result in any discharge" into the nation's navigable waters must provide the licensing or permitting agency with a water quality certification from the state in which the discharge will originate. 33 U.S.C. § 1341(a)(1). Under this section, the state certifies that the discharge will comply with other applicable provisions of the Clean Water Act, including a section that requires each state to adopt its own state water quality standards. *See*

6

*S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 374 & n.1 (2006); *Pub. Util. Dist. No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 703 (1994). The "requirement for a state certification applies not only to applications for licenses from FERC, but to all federal licenses and permits for activities which may result in a discharge into the Nation's navigable waters." *Pub. Util. Dist. No. 1 of Jefferson Cnty.*, 511 U.S. at 723; *see also Gunpowder Riverkeeper v. FERC*, 807 F.3d 267 (D.C. Cir. 2015) (Rogers, J., dissenting in part and concurring in the judgment) (detailing Clean Water Act requirements for FERC-jurisdictional pipelines).

In this case, the Pennsylvania Department of Environmental Protection (Pennsylvania) and New Jersey Department of Environmental Protection (New Jersey) are the agencies responsible for evaluating applications for state water quality certifications. Certificate Order P 77, JA ___; Rehearing Order PP 41-43, JA ___-___; Environmental Assessment for the Leidy Southeast Expansion Project, CP13-551-000 at 61 (August 2014) (EA or Environmental Assessment), R. 360, JA ___. Pennsylvania and New Jersey both issued their water quality certifications in April 2015. *See* Rehearing Order P 42, JA ___. On August 8, 2016, the Third Circuit rejected Petitioners' challenges to those state certifications. *See Del. Riverkeeper Network v. Pa. Dep't of Envtl. Protection*, Nos. 15-2122, *et al*. (3d Cir. Aug. 8, 2016).

### C.    National Environmental Policy Act

The Commission's consideration of an application for a certificate of public convenience and necessity triggers environmental review.  *See* 42 U.S.C. §§ 4321, *et seq.*  The National Environmental Policy Act ("NEPA") sets out procedures to be followed by federal agencies to ensure that the environmental effects of proposed actions are "adequately identified and evaluated."  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).  "NEPA is a procedural statute; it 'does not mandate particular results, but simply prescribes the necessary process.'"  *Minisink Residents for Envtl. Pres. and Safety v. FERC*, 762 F.3d 97, 111 (D.C. Cir. 2014) (quoting *Robertson*, 490 U.S. at 350); *see also Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 768 (2004) (same).  "NEPA imposes only procedural requirements on federal agencies with a particular focus on requiring agencies to undertake analyses of the environmental impact of their proposals and actions."  *Public Citizen*, 541 U.S. at 756-57 (quoting *Robertson*, 490 U.S. at 349-50); *see also Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 503 (D.C. Cir. 2010) (NEPA ensures a "fully informed and well-considered decision, not necessarily the best decision").  Accordingly, an agency must take a "hard look" at "the environmental impact of its action[]."  *Minisink*, 762 F.3d at 111; *see also Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983) (same).

Regulations implementing NEPA generally require agencies to consider the environmental effects of a proposed action by preparing either an environmental assessment, if supported by a finding of no significant impact, or a more comprehensive environmental impact statement.  *See* 40 C.F.R. § 1501.4 (detailing when to prepare an environmental impact statement versus an environmental assessment); *see also, e.g.*, *Sierra Club v. FERC*, No. 14-1249, slip op. at 3-4 (D.C. Cir. June 28, 2016) (summarizing regulations governing agency's determination whether an environmental impact statement is needed).

An environmental assessment need not contain long descriptions or detailed data which the agency may have gathered.  Rather, it should contain a brief discussion of the need for the proposal, alternatives to the proposal, the environmental impacts of the proposed action and alternatives, and a list of agencies and persons consulted.  *See* 40 C.F.R. § 1508.9(b).  If, pursuant to the environmental assessment, an agency determines that an environmental impact statement is not required, it must issue a "finding of no significant impact," which briefly presents the reasons why the proposed agency action will not have a significant impact on the human environment.  *See* 40 C.F.R. §§ 1501.4(e), 1508.13.  Once the agency issues a finding of no significant impact, it has fulfilled NEPA's documentation requirements.  *See Taxpayers of Mich. Against Casinos v. Norton*, 433 F.3d 852, 857 (D.C. Cir. 2006) (citing 40 C.F.R. §§ 1501.4(e), 1508.9,

1508.13).

## II.     FACTUAL BACKGROUND

### A.     The Leidy Project

On September 28, 2013, Transcontinental Gas Pipe Line Company, LLC (Transco) filed an application to construct and operate its proposed Leidy Project. *See* Certificate Order P 1, JA ___; *see also* Environmental Assessment at 1-2, JA ___-___.  Transco proposes to construct and operate approximately 29.97 miles of new pipeline loop, consisting of four pipeline loop segments, and to add 71,900 horsepower at four compressor stations, located in Pennsylvania and New Jersey. *See* Certificate Order P 4, JA ___.  The Project will enable Transco to transport an additional 525,000 dekatherms per day from two existing interconnections in Pennsylvania to various delivery points on Transco's mainline, as far south as Alabama.  *See* Certificate Order P 4, JA ___.

### B.     The Commission's Environmental Review

The Commission initiated its environmental review of the Project on January 29, 2013 using its pre-filing process, and assigned Docket No. PF13-5-000 to that review.  *See* Certified Index to the Record, D.C. Cir. No. 16-1092, R.1-182 (containing numerous comments from stakeholders in advance of Transco's Leidy Application, filed on September 30, 2013, R.183, JA ___).  The Commission solicited comments from stakeholders, including from Riverkeeper, in multiple

10

open houses and public scoping meetings, and participated in meetings with Riverkeeper (and others) directly. *See* Certificate Order P 34, JA ___-___ (describing outreach on environmental issues).

After considering all substantive comments on the Project and alternatives, the Commission issued a detailed 221-page (excluding appendices) Environmental Assessment. *See* Certificate Order PP 36-37, JA ___-___. The Environmental Assessment analyzed the Project's impacts on the following resources:  geology and soils; water resources, fisheries and wetlands; vegetation and wildlife; land use, recreation, special interest areas and visual resources; socioeconomics; cultural resources; air quality; noise; reliability and safety; and cumulative impacts. *See* EA at 31-179, JA ___-___; *see also* Certificate Order PP 33-127 (discussing environmental review).  Where adverse impacts were identified, the Environmental Assessment recommended mitigations measures that, if imposed, would reduce or resolve the identified impact.  EA at 211-17, JA ___-___.  Ultimately, the Environmental Assessment concluded that approval of the proposed Project, with appropriate mitigating measures, would not constitute a major federal action significantly affecting the quality of the human environment.  *Id*. at 13, 99, JA ___, ___; *see also* Certificate Order P 44, JA ___.

    **C.**    **The Challenged Orders**

        **1.**    **The Certificate Order**

On December 18, 2014, the Commission issued an order conditionally authorizing Transco to construct and operate the Leidy Project subject to 24 environmental conditions.  Certificate Order P 1, Ordering PP (A)-(B) & App. B (listing conditions), JA ___-___ & ___-____.  The Certificate Order explained that the Commission undertakes a step-by-step analysis to balance the public benefits of a proposed project against the potential adverse consequences of the project, which include unnecessary disruptions to the environment and unneeded exercise of eminent domain.  *Id.* PP 10-11, JA __-__ (citing *Certification of New Interstate Natural Gas Pipeline Facilities*, 88 FERC ¶ 61,227 (1999), *clarified*, 90 FERC ¶ 61,128, *further clarified*, 92 FERC ¶ 61,094 (2000)).  The Commission found that Transco substantiated the need for the Project, particularly noting that the Project was fully subscribed and that Washington Gas Light Company affirmed its need for the Project to meet growing natural gas demand of over 1 million end-use customers.  *Id.* PP 16-17, JA __-__ (citing Washington Gas Light's Comments, Docket No. CP13-551-000 (Aug. 29, 2014), R.___, JA __).

Next, the Commission conducted a thorough environmental review of the Project, taking into account the Environmental Assessment and all substantive comments on it.  *See id.* PP 33-127, JA ___-___.  The Commission addressed all of Riverkeeper's environmental comments including the issues which were ultimately raised in this appeal:  the Clean Water Act (*id.* P 77, JA ___); wetlands (*id.* PP 77-

79, JA ___-___); and gas flow velocities (*id*. PP 25-32, JA ___-___).  After consideration of the information and analysis contained in the record regarding the potential environmental effects of the Project, the Commission concluded that the Project, as mitigated, would have no significant environmental impact.  *Id*. P 126, JA ___.

Ultimately, upon balancing the evidence of public benefits against the identified potential adverse effect of the Project, coupled with its finding of no significant environmental impact, the Commission determined that the Project, with appropriate environmental conditions and mitigation measures, was required by the public convenience and necessity.  *Id*. P 17, JA ___.

### 2.    Rehearing Order

Riverkeeper raised six arguments on rehearing of the Certificate Order.  *See* Motion for Rehearing, FERC Docket No. CP13-551-000 (Jan. 16, 2015) ("Rehearing Request"), R. 411, JA __.  On rehearing, the Commission rejected each of Riverkeeper's challenges.  *See* Rehearing Order P 1, JA __.  As relevant to this appeal, the Commission affirmed its determinations in the Certificate Order that it fully complied with the Clean Water Act.  *Id.* PP 41-47, JA ___-___.  The Commission fully explained why its wetlands delineations were proper and satisfied its obligations under NEPA.  *Id*. PP 36-38, JA ___.  And the Commission rejected Riverkeeper's allegation that the Commission failed to provide critical gas

flow velocity information, and affirmed its findings that Transco properly designed the Project to operate safely without the need for future looping  in order to reduce gas flow velocities.  *Id*. PP 28-35, JA ___-___.

### D.     Motions For Stay

Almost a month after seeking rehearing, Riverkeeper filed a motion with the Commission to stay any construction and any other land-disturbing activity conducted under the certificate until the Commission acted on rehearing of the Certificate Order.  *See* Motion for Stay, FERC Docket No. CP13-551-000, R. 425, JA ___ (filed Feb. 12, 2015).

On February 23 and 25, 2015, as supplemented on February 26 and March 3, 2015, Transco filed requests to begin limited, non-mechanized tree felling.  *See, e.g.,* Feb. 24, 2015 Filing at 1 (Transco Feb. 24 Letter), R.434, JA __.   Transco's requests were made to comply with timing imposed by the U.S. Fish and Wildlife Service's recommendation and the Project-specific Indiana Bat Conservation Plan. *See id*.  On March 9, 2015, Commission staff, pursuant to delegated authority granted under 18 C.F.R. § 375.308(x), authorized Transco to proceed with limited tree-felling.  *See* FERC Letter Authorizing Tree-Felling Activities at 1-2, FERC Docket No. CP13-551-000, R. 466, JA ___-___ (Mar. 9, 2015) (explaining that Transco obtained necessary federal clearances for the approved activities, and

14

noting letter from Army Corps that tree-felling activities do not disturb root systems and would not result in a discharge of dredged and/or fill material).

Riverkeeper did not seek rehearing of that decision. Instead, Riverkeeper sought immediate recourse in this Court. *See* Petition For Writ For Emergency Stay, D.C. Cir. No. 15-1052 (filed March 10, 2015). While Riverkeeper's Motion was pending before this Court, the Commission issued an order denying stay of its Certificate Order. S*ee* Stay Denial, FERC Docket No. CP13-551-000 (Mar. 12, 2015). The Commission reasoned that Riverkeeper could not demonstrate significant environmental impacts showing a stay was in the public interest. Further, without the immediate tree felling activity, under the timetable dictated by another federal agency in order to protect the endangered Indiana Bat, the Project would be considerably delayed, thereby delaying the delivery of needed natural gas supplies. One week later, this Court denied Riverkeeper's emergency petition. *In re: Delaware Riverkeeper Network*, No. 15-1052 (D.C. Cir. Mar. 19, 2015). The Court found that Riverkeeper did not satisfy the stringent requirements for stay. *See id*. (citing *Reynolds Metals Co. v. FERC*, 777 F.2d 760, 762 (D.C. Cir. 1985)).

## SUMMARY OF ARGUMENT

The Commission fully satisfied all of its statutory responsibilities in conditionally approving the Project. Its comprehensive, 221-page Environmental Assessment fully informed the Commission's decision-making and allowed it to

15

balance potential environmental impacts against the public benefits of the Project,
which will add vital pipeline capacity to meet increasing customer demand for
natural gas.

Notwithstanding the Commission's completion of its environmental review,
Riverkeeper asserts that the Commission must sit idle and await issuance of,
among other authorizations, state water quality certifications under the Clean
Water Act. But this is unnecessary and undermines the integration of the various
permitting requirements for interstate pipelines, as contemplated by the Natural
Gas Act and the Clean Water Act. Consistent with decades of Commission
practice, and this Court's precedent permitting project approvals pending receipt of
other mandatory federal and state authorizations, the Certificate Order includes
appropriate conditions requiring receipt of all applicable federal and state
authorizations prior to any construction activity. The Certificate Order is
consistent with the Clean Water Act, and preserves a State's "power to block the
project."

In challenging the Commission's compliance with the Clean Water Act,
Riverkeeper invites the Court to review not only the Certificate Order and
Rehearing Order, but assorted staff letter orders authorizing Transco to proceed
with limited pre-construction activities (including tree-felling) as part of the
Commission's ongoing oversight of the Project. But Riverkeeper has failed to

satisfy the statutory prerequisites to judicial review of those letter orders:  it sought neither agency rehearing nor appellate review of those orders.  Riverkeeper cannot, simply because those orders issued before the Commission denied rehearing of its Certificate Order, expand the scope of the claims properly presented for review. Ultimately, in any event, the requirement that pipeline construction not proceed pending receipt of necessary federal and state permits remains inviolate.

The Commission also satisfied its responsibilities under NEPA, and developed a complete record on potential Project impacts to all impacted resource categories:  geology; water resources, fisheries and wetlands; vegetation and wildlife; land use and recreation; socioeconomics; cultural resources; air quality; noise; reliability and safety; and cumulative impacts.  In contrast to this extensive analysis, Riverkeeper disputes the Commission's findings on just two issues: wetlands and gas velocities.  As explained, on both issues the Commission's decisions are supported by substantial record evidence.  With respect to wetlands, the Commission explained that it uses the U.S. Army Corps of Engineers' Wetlands Delineation Manual to delineate wetlands impacts and that this methodology was reasonable and sufficient for identifying wetlands impacts.  The Commission is not required to use Riverkeeper's preferred approach.  On natural gas velocities, the Commission reviewed and evaluated all record evidence and explained the basis for its findings.  That is all that is required.

17

# ARGUMENT

## I.   THE COURT LACKS STATUTORY JURISDICTION OVER COMMISSION STAFF LETTER ORDERS AUTHORIZING PRE-CONSTRUCTION ACTIVITIES

Delaware Riverkeeper asks the Court to review whether four letter orders issued by Commission staff pursuant to delegated authority, which authorized Transco to begin certain limited pre-construction activities, are consistent with the Clean Water Act.  Br. 25 (citing Letter Order, Docket No. CP13-551-000 (Jan. 30, 2015) R. 420, JA ___, Letter Order, CP13-551-000 (Feb. 5, 2015) R. 422, JA ___, Letter Order, CP13-551-000 (Mar. 9, 2015) R. 466, JA ___, and Letter Order, CP13-55-000 (Mar. 25, 2015) R. 474, JA ___); *see also id*. at 25-34 (argument challenging letter orders).  But Riverkeeper has deprived the Court of jurisdiction to review those orders by failing to satisfy the two statutory prerequisites to review.  *See* 15 U.S.C. § 717r (providing jurisdiction to U.S. Courts of Appeals to review Commission decisions under the Natural Gas Act).  The Natural Gas Act requires that, prior to challenging an order before this Court on review, a party first must file a petition for rehearing to the Commission and then specify the challenged orders in a petition for judicial review.  15 U.S.C. §§ 717r(a), (b); *see Granholm ex rel. Michigan Dep't of Nat. Res. v. FERC*, 180 F.3d 278, 280–81 (D.C. Cir. 1999) ("This petition-for-rehearing requirement is mandatory. . . . Neither the court nor the Commission retains 'any form of jurisdictional discretion'

to ignore it.") (quoting *ASARCO, Inc. v. FERC*, 777 F.2d 764, 774 (D.C. Cir.

1985)); *see also* Fed. R. App. P. 15(a)(2)(C) (requiring petition for review of

agency order to "specify the order or part thereof to be reviewed").  "The Natural

Gas Act's jurisdictional provisions are stringent."  *Sierra Club*, No. 14-1249, slip

op. at 15 (D.C. Cir. June 28, 2016) (finding no jurisdiction to hear arguments not

first raised to the Commission on rehearing) (citing *Columbia Gas Transmission

Corp. v. FERC*, 477 F.3d 739, 741 (D.C. Cir. 2007)).

Pursuant to Commission regulations, 18 C.F.R § 375.301(a), any action by a

staff official under delegated authority, such as the letter orders referenced by

Riverkeeper, may be appealed to the Commission in accordance with section

385.1902 of the regulations.  Section 385.1902(a) provides that "any staff action"

"taken pursuant to authority delegated to the staff by the Commission is a final

agency action that is subject to a request for rehearing under Rule 713" of the

Commission's Rules of Practice and Procedure.  18 C.F.R. § 385.1902; *see also* 18

C.F.R. § 385.713 (governing requests for rehearing).

Because Riverkeeper failed to seek rehearing of any of the delegated letter

orders authorizing pre-construction activities, those individual decisions are not

properly before this Court.  *See Murray Energy Corp. v. FERC*, 629 F.3d 231

(D.C. Cir. 2011) (reviewing, after rehearing, a delegated order authorizing

construction of a natural gas pipeline).  The *National Committee for the New River*

cases demonstrate the procedure Riverkeeper was required to follow here. There, petitioners first appealed Commission orders issuing a certificate for new pipeline facilities, and then later, after seeking agency rehearing, appealed various letter orders authorizing route changes and otherwise addressing the pipeline's compliance with the conditions in the certificate order. *Nat'l Comm. for the New River, Inc. v. FERC*, 373 F.3d 1323, 1325 (D.C. Cir. 2004) (affirming certificate orders over objections to the Commission's environmental review); *Nat'l Comm. for the New River, Inc. v. FERC*, 433 F.3d 830 (D.C. Cir. 2005) (reviewing, after rehearing to the Commission, delegated orders authorizing route changes during construction). Here, Riverkeeper did not seek rehearing of the delegated letter orders or specify those orders in its petition for review to this Court or in its initial filings. *See*, *e.g.*, Petition for Review, No. 16-1092 (D.C. Cir. filed Mar. 8, 2016); Preliminary Statement of Issues on Appeal, No. 16-1092 (D.C. Cir. filed Apr. 4, 2016). (Instead, Riverkeeper unsuccessfully petitioned this Court for an emergency stay. *See supra* p. 15.) As a result, the Court lacks jurisdiction over Riverkeeper's challenges to the authorization of pre-construction activities, including tree-felling.[2]

---

[2] The four letter orders cited by Riverkeeper authorize construction of meter and regulation stations, compressor stations, and a pipe yard, and also authorize non-mechanized tree felling. In each of the orders, Commission staff confirms the receipt of all federal authorizations and clearances relevant to the activities

Moreover, Delaware Riverkeeper, without seeking rehearing, is asking the Court to review whether individual notices issued pursuant to delegated authority resulted in a "discharge" thereby triggering the requirement of a Clean Water Act water quality certificate.  Br. 25-34.  Such a review would necessarily involve factual determinations about what constitutes a "discharge."  But this is a factual matter that should first be raised to the Commission, and then preserved in a rehearing request.  *See* 15 U.S.C. § 717r(a); *see also Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 154-55 (D.C. Cir. 2006) (recognizing the multiple benefits of exhaustion of administrative remedies, including production of a useful record for subsequent judicial consideration).

Additionally, the record indicates that Riverkeeper's assertion is wrong. *See, e.g.,* Transco Letter, FERC Docket No. CP13-551-000, R. 440, JA ___-___ (Feb. 26, 2015) (attaching Feb. 25, 2015 U.S. Army Corps of Engineers letter explaining that tree felling, i.e., cutting trees at or above ground level leaving the root system in place and leaving them for later removal, would not require a discharge permit); *see also Del. Riverkeeper Network*, 3d Cir. No. 15-2122, slip op. at 48 (finding "no nexus between tree clearing activity and the [Pennsylvania] Water Quality Certification").  In any event, as discussed in the next section, the

---

approved.  *See* Letter Order, R. 420, JA ___, Letter Order, R. 422, JA ___, Letter Order, R. 466, JA ___, and Letter Order, R. 474, JA ___.

Commission's approval of the Project, conditioned on receipt of all federal and state authorizations, including state water quality certification, fully complies with the Clean Water Act.

## II. THE COMMISSION'S CONDITIONAL APPROVAL OF THE LEIDY PROJECT COMPLIES WITH THE CLEAN WATER ACT

Riverkeeper claims, *see* Br. 19-24, 34, that the Commission's conditional authorization of the Project in the Certificate Order – as opposed to the subsequent delegated orders to authorize pre-construction activities (which are not properly before the Court) – exceeded the Commission's authority and violated the Clean Water Act.  This claim was properly preserved in Riverkeeper's petition for rehearing to the Commission, but Riverkeeper is nonetheless incorrect.[3]  *See* Rehearing Order PP 41-47, JA ___-__; *see also Gunpowder Riverkeeper*, 807 F.3d

---

[3] With the Third Circuit's decision to uphold the Pennsylvania and New Jersey water quality certifications, *see supra* p. 7, in particular, we note that Riverkeeper's claimed violation of the Clean Water Act may no longer present an ongoing case or controversy.  *See Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1335 (2013) (detailing Article III mootness analysis); *see also* Rehearing Order P 42, JA ____ (finding Riverkeeper's Clean Water Act claim moot).  It is not clear what relief would be available to remedy Riverkeeper's sequencing claims – if they prevailed – where the water quality certifications have been issued and affirmed on appeal.  *See Decker*, 133 S. Ct. at 1335 (noting that a case is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party") (quoting *Knox v. Service Employees Int'l*, 132 S. Ct. 2277, 2287 (2012) (internal quotation marks omitted)); *see also Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 78 (D.C. Cir. 2011) (rejecting claims brought against an agency decision that was no longer in effect, while proceeding to the merits of other claims, including NEPA challenges, against current agency decision).

267, 275, 279-81 (Rogers, J., dissenting in part and concurring in the judgment) (addressing, and finding without merit, the same argument Riverkeeper presents here).

### A.    Standard Of Review

Where a court is called upon to review an agency's construction of a statute it administers, such as the Commission's administration of the Natural Gas Act, well-settled principles apply.  If Congress has directly spoken to the precise question at issue, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984).  If the statute is silent or ambiguous on the question at issue, then the court must decide whether the agency's decision is based on a permissible construction of the statute and, if it is, defer to the agency's construction.  *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013); *see also Myersville Citizens for a Rural Cmty., Inc. v. FERC,* 783 F.3d 1301, 1315 (D.C. Cir. 2015) ("[I]n evaluating the Commission's authority to issue the challenged certificate of public convenience and necessity," this Court applies "the two-step analytical framework" of *Chevron*).

The Commission's interpretation of other statutory authority, including the Clean Water Act, is reviewed *de novo*.  *Alcoa Power Generating Inc. v. FERC*, 643

F.3d 963, 972 (D.C. Cir. 2011) (citing *Ala. Rivers Alliance v. FERC*, 325 F.3d 290, 296–97 (D.C. Cir. 2003)) (finding the Commission's interpretation "consistent with the plain text and statutory purpose of the provision").

### B.    The Certificate Order Requires The Pipeline's Compliance With The Clean Water Act

The Certificate Order expressly requires Transco to obtain all necessary federal and state approvals before the Commission will authorize Project construction.  *See* Certificate Order P 77, JA ___; *see also id*. at Envtl. Condition 9, JA ___; Rehearing Order P 43, JA ___.  This conditional authorization is a reasonable exercise of the Commission's broad authority to condition certificates for interstate pipelines on "such reasonable terms and conditions as the public convenience and necessity may require."  NGA § 7(e), 15 U.S.C. § 717f(e); *see also, e.g.*, *ANR Pipeline Co. v. FERC*, 876 F.2d 124, 129 (D.C. Cir. 1989) (noting the Commission's "extremely broad" conditioning authority).  Riverkeeper incorrectly claims that the Clean Water Act requires the Commission to defer its review of pipeline applications pending receipt of a state's water quality certification.  Br. 19-24.  But the Commission's approach, which ensures that a state's certification is given full force and effect, appropriately respects the integration of the various permitting requirements for interstate pipelines, as reflected in the Natural Gas Act and the Clean Water Act.

"In designing the Clean Water Act, Congress plainly intended an integration of both state and federal authority." *Keating v. FERC*, 927 F.2d 616, 622 (D.C. Cir. 1991). Section 401(a)(1) of the Clean Water Act provides that no federal "license or permit shall be granted until the" state certifies that any activity "which may result in a discharge into the navigable waters" will comply with the applicable provisions of the Act. 33 U.S.C. § 1341(a)(1). As this Court has held, this provision empowers states to condition and, where appropriate, block FERC-licensed energy projects. *See*, *e.g*., *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 971 (D.C. Cir. 2011). If a state imposes conditions in its water quality certification, those conditions are incorporated into the federal license. *Id*.

Consistent with the language of Clean Water Act section 401, FERC's orders assure that until the Pennsylvania and New Jersey water quality agencies have "issued the [water quality certifications], Transco could not begin an activity, i.e., pipeline construction, which may result in a discharge into jurisdictional waterbodies." Rehearing Order P 43, JA ___; *see also* Certificate Order P 77, JA ___ ("As required by Environmental Condition No. 9, Transco will not be authorized to construct the project without documentation of all applicable authorizations under federal law."); *id*. at Envtl. Condition 9, JA ____. As required by this condition, to the extent any activity associated with the Project may result in a discharge for which a permit is required, Transco must obtain a

25

permit from the appropriate agency before it may engage in such activities.  *See*

*AES Sparrows Point LNG, LLC*, 129 FERC ¶ 61,245 at P 67 (2009) ("If an agency

decides a project does not merit authorization - a decision the Commission is

without authority to impact or alter - then the project cannot go forward."), *cited in*

Rehearing Order P 45, JA ___; *see also Broadwater Energy*, *LLC*, 124 FERC

¶ 61,225, at P 58 (2008) ("state agencies retain full authority to grant or deny the

specific requests"), *cited in* Rehearing Order P 45, JA ___.  And, as the

Commission made clear, "[i]f additional measures are required to meet any permit

requirements, Transco would carry the burden of meeting those additional

measures in order to receive the permit."  Certificate Order P 77, JA ___.

     As this Court is aware, the Commission's long-standing practice is not to

delay action on project proposals until all state and federal authorizations have

been issued.  *See* Rehearing Order P 45, JA ___; *see also Del. Dep't of Nat. Res.*

*and Envtl. Control v. FERC*, 558 F.3d 575, 577 (D.C. Cir. 2009) (noting that final

approval of the pipeline was subject to condition requiring satisfaction of other

state and federal permitting requirements); *Myersville*, 783 F.3d at 1308 (noting

that Commission conditioned approval of pipeline on receipt of all necessary

federal authorizations, including Clean Air Act permits); *Pub. Utils. Comm'n of*

*Cal.*, 900 F.2d at 282 (noting that Commission expressly conditioned pipeline on

completion of environmental review under the National Environmental Policy

Act).  Major energy infrastructure projects "take considerable time and effort to

develop," and are "subject to many significant variables whose outcome cannot be

predetermined."  *Crown Landing, LLC*, 117 FERC ¶ 61,209, at P 28 (2006),

*dismissed sub nom. Del. Dep't of Natural Res.*, 558 F.3d 575.  "[T]he

Commission's approach is a practical response to the reality that, in spite of the

best efforts of those involved, it may be impossible for an applicant to obtain all

approvals necessary to construct and operate a project in advance of the

Commission's issuance of its certificate without unduly delaying the project."

*Broadwater Energy*, *LLC*, 124 FERC ¶ 61,225, at P 59 (2008), *cited in* Rehearing

Order P 45, JA ___; *see also Oregon v. FERC*, 636 F.3d 1203, 1206 (9th Cir.

2011) (dismissing, as moot, appeal of natural gas infrastructure authorizations

where applicant failed to obtain other federal authorizations and subsequently filed

for bankruptcy); *City of Fall River v. FERC*, 507 F.3d 1, 6-8 (1st Cir. 2007)

(dismissing, as unripe, appeal of FERC's orders approving liquefied natural gas

terminal and pipeline conditioned on receipt of federal and state authorizations,

where applicant had been unable to obtain those authorizations).

The Commission's conditional authorization assures compliance with the

terms of the Clean Water Act.  Riverkeeper overstates the Act's requirements when

it claims that a state's issuance of a water quality certification is "a condition

precedent to *any* federal license or permit activity."  Br. 20 (emphasis added); *id*. at

23 ("Section 401 of the Clean Water Act very clearly requires a water quality

certificate to be issued by the state before *any other* federal approval.") (emphasis

altered).  The Certificate Order assured that "Transco could not begin an activity,

i.e., pipeline construction, which may result in a discharge into jurisdictional

waterbodies."[4]  Rehearing Order P 43, JA ___.  This condition, the Commission

determined, renders the Certificate Order "consistent with the Clean Water Act."

*Id*.  As Judge Rogers explained in addressing the same issue in her concurring

opinion in *Gunpowder Riverkeeper*, on "its face, section 401(a)(1) does not

prohibit *all* 'license[s] or permit[s]' . . . only those that allow the licensee or

permittee 'to conduct any activity . . . which may result in a discharge into the

navigable waters.'"  807 F.3d at 279 (quoting 33 U.S.C. § 1341(a)(1)).  (The

*Gunpowder* majority did not reach the merits of the case because it found that the

petitioner there lacked prudential standing under the Natural Gas Act, Clean Water

Act, and NEPA.)

---

[4] Riverkeeper has failed to preserve for judicial review its argument that the legislative history of the Clean Water Act requires that a state water quality certification must always precede any federal license or permit.  Br. 22; *see* 15 U.S.C. § 717r(b) (generally limiting Court's jurisdiction to issues raised on rehearing before the Commission).  In any event, like the present-day section 401 of the Clean Water Act, its predecessor was similarly limited to federal action "which may result in any discharge into navigable waters of the United States." H.R. Conf. Rep. No. 940, 91st Sess., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin. News 2712, 2741.

Here, the conditional authorization "preserved the State's 'power to block the project'" under the Clean Water Act. *Gunpowder Riverkeeper*, 807 F.3d at 279 (Rogers, J., concurring in relevant part) (quoting *City of Tacoma v. FERC*, 460 F.3d 53, 67 (D.C. Cir. 2006)). Thus, "[t]he plain text of the Clean Water Act does not appear to prohibit the kind of conditional certificate the Commission issued here." *Id.*; *see also id.* at 281 (noting that the Clean Water Act does not "appl[y] to all manner of regulated activities that do not affect water quality").

In considering statutes structured similar to the Clean Water Act, this Court has affirmed agency actions authorizing projects conditioned on subsequent receipt of all other necessary federal and state approvals. *See* Rehearing Order P 47, JA ___; *see Gunpowder Riverkeeper*, 807 F.3d at 280 (Rogers, J., concurring in relevant part). In *City of Grapevine v. U.S. Dept. of Transportation*, 17 F.3d 1502 (D.C. Cir. 1994), this Court held that the agency's conditional approval of a runway did not violate the Preservation Act, because the Act specifically prohibited only the approval of expenditures of federal funds, and not any other authorization. *See* Rehearing Order P 46, JA ___ (quoting *City of Grapevine*, 17 F.3d at 1509) ("In sum, because the [agency's] approval of the West Runway was expressly conditioned upon completion of the [Preservation Act] process, we find here no violation of [that Act]."). As in *City of Grapevine*, if a certificate holder commits its own resources to further development activities prior to receipt of all

29

federal approvals, "'it does so at the risk of losing its investment.'"  Rehearing

Order P 46, JA ___ (quoting *City of Grapevine*, 17 F.3d at 1509)); *see also*

*Gunpowder Riverkeeper*, 807 F.3d at 280 (Rogers, J., concurring in relevant part)

(noting that risk of proceeding under a conditional authorization for the runway

project "before the condition is satisfied" "echo[es] the circumstances here" of

conditional authorization).

In this case, as in others, the Commission relied on that holding.  *See*

Rehearing Order P 45 & n.55, JA ___ (citing cases relying on *City of Grapevine* as

consistent with the Commission's practice of issuing conditional authorizations:

*AES Sparrows Point LNG, LLC*, 129 FERC ¶ 61,245 at P 72 (2009); *Broadwater*

*Energy LLC*, 124 FERC ¶ 61,225 at P 60 (2008); *Georgia Strait Crossing Pipeline*

*LP*, 108 FERC ¶ 61,053 at P 16 (2004)).  The Preservation Act requires that a

federal agency must conduct a review of a proposed project's impact on historic

properties prior to the approval of the expenditure of any federal funds on the

project.  Rehearing Order P 45, JA ___; *see also City of Grapevine*, 17 F.3d at

1509 (citing 16 U.S.C. § 470f (repealed Pub. L. No. 113-287, § 7, 128 Stat. 3272

(Dec. 19, 2014))).  The Commission has "likened the [National Historic

Preservation Act] to the Clean Water Act" because the Preservation Act "expressly

prohibits a federal agency from acting prior to compliance with its terms."

Rehearing Order P 45, JA ___ (citing cases).

This Court has employed similar reasoning to that in *City of Grapevine* when faced with challenges to conditional authorizations under similar statutory schemes, including those that permit states to block or condition federally-approved projects. *See Myersville*, 783 F.3d at 1315, 1317-21 (holding that the Commission did not violate the Clean Air Act by issuing a similar conditional authorization prior to the project sponsors obtaining the required Clean Air Act permit); *Pub. Utils. Comm'n of Cal.*, 900 F.2d at 282 (holding that the Commission did not violate the National Environmental Policy Act by issuing a certificate conditioned on completion of its environmental review); *Del. Dep't of Nat. Res. & Envtl. Control*, 558 F.3d at 576 (dismissing for lack of standing, and rejecting claim that state's procedural rights were not adequately protected by FERC's conditional authorization, which was expressly conditioned on the state's action under the Coastal Zone Management Act). The Commission thus reasonably relied on this line of precedent, as it has for well over a decade, in authorizing conditional approval of the Leidy Project pending receipt of outstanding federal and state approvals. *See* Rehearing Order PP 45-47, JA ___-___.

Riverkeeper acknowledges the Commission's authority to place conditions on certificates under section 7 of the Natural Gas Act, Br. 23, as it must. *See ANR Pipeline*, 876 F.2d at 129 (noting FERC's "extremely broad" conditioning authority) (citing 15 U.S.C. § 717f(e)). But Riverkeeper offers no response to the

Commission's determination that this Court's precedent permitting conditional

authorizations in compliance with other statutory schemes applies equally here.

Now, under this Court's rules, it has waived the opportunity to do so.  Fed. R. App.

P. 28(a)(8)(a) (petitioner's opening brief must contain its "contentions and the

reasons for them, with citations to the authorities and parts of the record on which

the appellant relies"); *see Consol. Edison Co. of New York, Inc. v. FERC*, 347 F.3d

964, 970 (D.C. Cir. 2003) (merely "hinting" at an argument in an opening brief

does not satisfy the Court's rules).

Moreover, "[t]he cases on which petitioner relies"—the same cases on which

the *Gunpowder Riverkeeper* petitioner relied—"are inapposite because they do not

involve certificates conditioned on state approval."  *Gunpowder Riverkeeper*, 807

F.3d at 280 (Rogers, J., concurring in relevant part).  *City of Tacoma*, 460 F.3d at

68, did not address the Commission's authority to issue conditional authorizations,

as Riverkeeper asserts, Br. 21, but rather "the extent to which the Commission

must verify that a state's water quality certification is valid."  Rehearing Order

P 44, JA ____ (citing *Crown Landing LLC*, 117 FERC ¶ 61,209 at P 27 n.38).

Riverkeeper similarly cites a string of cases concerning the intersection of the

Federal Power Act, under which the Commission issues licenses to hydropower

projects, and the Clean Water Act.  *See* Br. 21-22.  In each case, the Court

summarizes the requirements of section 401, but "had no occasion to address what

kind of 'license' might comply with the Clean Water Act . . . ." *Gunpowder Riverkeeper*, 807 F.3d at 280 (Rogers, J., concurring in relevant part).

## III.   THE COMMISSION FULLY SATIFIED ITS NEPA OBLIGATIONS

### A.   Standard Of Review

The Court reviews the substance of Commission actions under the Administrative Procedure Act, overturning disputed orders only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  The Administrative Procedure Act's arbitrary and capricious standard applies to challenges under the National Environmental Policy Act.  *See Nevada v. Dep't of Energy*, 457 F.3d 78, 87 (D.C. Cir. 2006).  When the Court reviews Commission action taken "under NEPA, the court's role is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious."  *Nat'l Comm. for the New River, Inc. v. FERC*, 373 F.3d 1323, 1327 (D.C. Cir. 2004) (denying appeal of FERC pipeline certificate decision) (quoting *Balt. Gas & Elec.*, 462 U.S. at 97-98); *see also, e.g.*, *Myersville*, 783 F.3d at 1322 (noting that FERC's NEPA obligations are "essentially procedural") (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978)).  The Commission's findings of fact, if supported by substantial evidence,

are conclusive.  *See Nat'l Comm. for the New River*, 373 F.3d at 1327 (citing 15 U.S.C. § 717r(b)).

Agency action taken pursuant to NEPA is entitled to a high degree of deference.  *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 377-78 (1989).  This Court evaluates agency compliance with NEPA under a "rule of reason" standard. *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 75 (D.C. Cir. 2011) (citing *Nevada*, 457 F.3d at 93); *see also Myersville*, 783 F.3d at 1322 (same).  This Court consistently declines to "flyspeck" an agency's environmental analysis, refusing to look for "any deficiency no matter how minor."  *Myersville*, 783 F.3d at 1322 (quoting *Nevada*, 457 F.3d at 93; and citing *Minisink*, 762 F.3d at 112).  Thus, "[a]s long as the agency's decision is 'fully informed' and 'well-considered,' it is entitled to judicial deference and a reviewing court should not substitute its own policy judgment."  *Natural Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 294 (D.C. Cir. 1988) (quoting *N. Slope Borough v. Andrus*, 642 F.2d 589, 599 (D.C. Cir. 1980)).  *See also Robertson*, 490 U.S. at 350-51 (NEPA merely prohibits uninformed – rather than unwise – agency action).

## B.     The Commission's Wetlands Analysis Fully Complied With NEPA

The Commission's analysis of wetlands was thorough.  Based upon the U.S. Army Corps of Engineers' (Army Corps) jurisdictional authority and special expertise with respect to wetlands, the Army Corps served as a cooperating agency

34

in the development of the Environmental Assessment. *See* Letter from U.S. Army

Corps, Docket No. PF13-5-000 (Sept. 6, 2013), R.179, JA ___ (confirming the

Corps' role in developing the Environmental Assessment, and specifically

requesting comprehensive evaluation of multiple issues including the delineation

of all wetlands and waters within the project study area); *see also* EA at 1, 10, JA

___, ___ (explaining the basis and role of the U.S. Army Corps of Engineers as a

federal cooperating agency in the preparation of the Environmental Assessment).

With the cooperation of the Army Corps, the Environmental Assessment describes

the field delineations of wetlands that would be crossed by the Leidy Project and

the methodologies used to perform those delineations. *See* EA at 61, JA ___.   The

Environmental Assessment details the impacts to wetland resources, and all

interested parties had the opportunity to comment on these findings. *See* EA at 61-

68; *see also* EA, Appendix I, JA ___-___ (listing wetlands affected by the Project).

The Commission's wetlands analysis easily satisfies NEPA's requirement to

adequately consider and disclose the environmental impacts of its actions. *See*

*Robertson*, 490 U.S. at 350 (environmental analysis serves "to provide adequate

notice of expected consequences and the opportunity to plan and implement

corrective measures in a timely manner").  The Commission explained that its

Environmental Assessment's wetland determinations were conducted using the

Corps' Wetlands Delineation Manual. *See* Certificate Order P 77, JA __ (citing

EA at 61, JA __).  The Commission determined that this methodology "is

sufficient for the Commission to disclose and evaluate potential impacts on

wetlands and to serve as a starting point for the development of protective

mitigation."  *Id*.; *see also* Rehearing Order PP 36-38, JA ___.

Delaware Riverkeeper argues that the Commission erroneously classified

wetlands in the Project area (Br. 34) because the Commission declined to use the

States' wetland classification criteria and aerial photographs to identify wetlands.

*See* Br. 44-48.  Riverkeeper misses the point.  The Commission did not "fail to

accurately identify and classify wetlands" (Br. 34) – it simply used a different

methodology than Riverkeeper preferred.  *See* Br. 48 (conceding that the

Commission's justification for alleged "improper" categorizations is that it used a

different methodology).  As the Commission explained, it was not required to use

Pennsylvania's State Wetland Classification, or to refute evidence submitted by

Riverkeeper's wetlands specialist.  *See* Br. 40-42 (detailing each of the wetlands

that Riverkeeper's wetland specialist would have classified differently under the

Pennsylvania classification criteria).  "Agencies are entitled to select their own

methodology as long as that methodology is reasonable."  *Hughes River Watershed*

*Conservancy v. Johnson*, 165 F.3d 283, 289 (4th Cir. 1999); *see also EarthReports,*

*Inc. v. FERC*, No. 15-1127, slip op. at 11 (D.C. Cir. July 15, 2016) (Commission

need not employ the Social Cost of Carbon methodology favored by petitioners)

(citing *Wildearth Guardians v. Jewell*, 738 F.3d 298, 309-12 (D.C. Cir. 2013) (deferring to agency's preferred method for modeling ozone under NEPA)).

Further, the Commission explained why the Army Corps' Wetlands Delineation Manual was a reasonable starting point for the development of protective mitigation. *See* Certificate Order P 77, JA ____; Rehearing Order P 37, JA ___. The Corps' Wetland Delineation methodology considers the water resource classification for each potentially affected surface and groundwater resource identified during the application process. *See* Certificate Order P 74, JA ___; Rehearing Order P 37, JA ___.

In particular, Riverkeeper's claim that the Commission should have classified nine wetlands as "exceptional" instead of "other" (Br. 40) does not undermine the Commission's analysis, nor does Riverkeeper's allegation that 14 of 49 wetlands were incorrectly identified "pursuant to the Pennsylvania code." Br. 45. A "rule of reason" applies to the Commission's NEPA review. *See Myersville*, 783 F.3d at 1322-23 (explaining that the Court "has repeatedly refused to 'flyspeck' the agency's findings in search of 'any deficiency no matter how minor'"); *Minisink*, 762 F.3d at 112 (rejecting NEPA challenges alleging Commission's analysis was insufficient); *see also American Rivers v. FERC*, 201 F.3d 1186, 1201 (9th Cir. 1999) (same). The Commission took the requisite "hard look" at impacts to wetlands, particularly where, as here, "stream designations and

37

state water quality standards are verified through final consultation with the appropriate state regulatory agencies, prior to their issuance of state permits." Rehearing Order P 37, JA ____.  The Commission's wetlands analysis is not a "cavalier review."  Br. 43.

Moreover, the Army Corps and individual States independently determine whether Transco's wetlands delineations comply with the individual agency's permit application process, prior to its issuing the appropriate water quality permit. *See* Certificate Order P 77, JA ___; Rehearing Order P 38, JA ___.  The Commission does not interfere with another agency's oversight of its own regulations.  *See* Certificate Order P 77, JA ___; *see also U.S. Dep't of Interior v. FERC*, 952 F.2d 538, 546 (D.C. Cir. 1992) (holding that agency need only establish a record to support its decisions and need not definitively resolve all environmental concerns); *Half Moon Bay Fishermans' Mktg. Ass'n v. Carlucci*, 857 F.2d 505, 511 (9th Cir. 1988) (recognizing that cooperation between federal agencies "is precisely what NEPA's goal of reasoned and informed decision making is all about").

Finally, the Commission required Transco to provide updates on its agency consultations.  *See* Certificate Order, Appendix I, Condition 8, JA ___ (requiring biweekly status reports); *see also* Certificate Order P 78, JA ___ (describing Transco update on agency consultation with New Jersey Department of

Environmental Protection).  The Commission can appropriately consider Transco's

compliance with the Army Corps and state environmental certification

requirements as a "reasonable component" of its independent review.  *See*

*EarthReports, Inc.*, No. 15-1127, slip op. at 16 (rejecting allegations that the

Commission abdicated its responsibility by acknowledging future coordination

with federal and local authorities); *see also id*. at 13 (distinguishing cases where

agency deferred to another agency's assessment without independent evaluation).

Additionally, the Commission requires compliance with its *Wetland and*

*Waterbody Construction and Mitigation Procedures* (*see* Certificate Order,

Appendix I, Condition 12, JA ___), recently updated in 2013 with input from a

diverse group of stakeholders.  *See* Certificate Order P 79, JA ___ (refuting

Riverkeeper's challenge, not raised here on appeal, that the Commission's

wetlands mitigation measures are inadequate); *see also* Rehearing Order P 40, JA

___ (procedures include industry best management practices designed to minimize

extent and duration of disturbance on wetlands and waterbodies during

construction).

Therefore, the Commission carefully considered mitigation of impacts to

wetlands, and appropriately affirmed that the baseline data used in the

Environmental Assessment to assess impacts on waterbodies and wetlands were

appropriate.  *See Coal. on Sensible Transp., Inc. v. Dole,* 826 F.2d 60, 66 (D.C.

Cir. 1987) (Because the NEPA process "involves an almost endless series of judgment calls . . . [t]he line-drawing decisions . . . are vested in the agencies, not the courts.").

**C.    The Commission Satisfied Its Obligations Under NEPA To Analyze Gas Flow Velocity Data**

**1.    The Commission's Findings Are Based On Substantial Evidence**

There is substantial record evidence on gas flow velocity to support the Commission's findings that:  1) Transco has properly designed its pipeline system; 2) the pipeline will operate safely; and 3) no future looping is required to reduce gas velocities.  *See* EA at 174, JA ___; Certificate Order PP 25-32, JA ___-___; Rehearing Order PP 28-35, JA ___-___.  The Commission's Environmental Assessment notes that, under steady state conditions, flow velocities would not exceed 60 feet per second.  EA at 174, JA ___.  Under peak transient conditions, only one section would reach 61 feet per second.  *Id*.  Flow velocity in the proposed loops would range from 30 to 50 feet per second.  *Id*.  While the Commission found that the Leidy Project is required to accommodate the proposed new service, future expansion on the system is entirely speculative and would be based on the specific requirements of any future natural gas customer.  *See* Certificate Order P 32, JA ___; Rehearing Order P 35, JA ___.

The Commission based its findings on its independent review of Transco's explanation and supporting documentation, including Transco's SynerGEE (sometimes called Synergi) Gas hydraulic flow model.  *See* Certificate Order PP 25-29, JA ___; Rehearing Order P 35, JA ___; Transco Dec. 23, 2013 Data Response, at 157, R. 286, JA___; Transco July 11, 2014 Data Response, at 1-2, R. 336, JA ___-___.  In particular, the Commission cited a study identified by Transco demonstrating that a gas flow velocity of 100 feet per second is a conservative design guideline for protecting pipelines.  *See* Certificate Order P 28, JA ___.  The Commission's judgment is based upon its expert analysis and should be respected.  *See*, *e.g.*, *Myersville*, 783 F.3d at 1308 (FERC's evaluation of scientific data is afforded "an extreme degree of deference"); *Nat'l Comm. for the New River*, 373 F.3d at 1327 (same).

Riverkeeper relies on its own expert report in an attempt to show that the Commission's conclusions are "not credible."  Br. 58.  But it is the Commission that has the responsibility to weigh the credibility of expert testimony.  *See Wisc. Valley Improvement Co. v. FERC*, 236 F.3d 738, 746-47 (D.C. Cir. 2011) (it is not the Court's "role to engage in *de novo* weighing of evidence"); *see also FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782-84 (2016) (affirming under deferential standard Commission's balance of competing expert witness views).  Here, the Commission reviewed Riverkeeper's expert report but found that no

41

industry studies or standards supported the expert's conclusions.  *See* Certificate

Order P 27, JA ___ (discussing Riverkeeper's expert, Mr. Kuprewicz's report).

Because Riverkeeper cites to no industry or government standard, regulation, or

study to support its position that flow velocities in excess of 50 feet per second

would result in unsafe operating conditions, the Commission found the report

conclusions speculative.  *See* Certificate Order PP 31, 32, JA ___, ____ (discussing

Riverkeeper's expert report); *see also* Rehearing Order P 35, JA ___.

Finally, Riverkeeper's suggestion that the Commission did not obtain

necessary gas flow velocity data is unfair.  Br. 49-56.  Riverkeeper details a history

of the exchange of information between the parties (Br. 54-55), but notably absent

from this accounting is Riverkeeper's acknowledgement that it was invited to view

Transco's hydraulic model but did not accept that invitation.  *See* Rehearing Order

PP 31, 34, JA ___, ____ (explaining that Transco offered to share its SynerGEE

gas hydraulic flow models at Transco's office or via video conference, and that

Riverkeeper filed a response acknowledging this invitation); *see also* Transco

Response to FERC July 23, 2015 Data Request, R. 348 (July 25, 2015), JA ___-

___ (explaining that electronic files from the SynerGEE Gas hydraulic flow

models were entered into the record, but due to the proprietary nature of the

models, Riverkeeper must view the model in Transco's office).

42

Contrary to Riverkeeper's allegation (Br. 54), the Commission found that the "Exhibit G information and the hydraulic flow modeling provides all the information Delaware Riverkeeper requested in the March 2014 letter, including the answers Delaware Riverkeeper seeks to the 10 questions." Rehearing Order P 34, JA ___. This finding is entitled to deference, particularly where Riverkeeper declined to avail itself of the opportunity to review record information. *See NRG Power Marketing, LLC v. FERC*, 718 F.3d 947, 962 (D.C. Cir. 2013) (court defers to FERC's informed judgment on issues that require technical expertise); *see also* FERC Letter to Delaware Riverkeeper, R.350 (July 30, 3014), JA ___ (explaining that the SynerGEE Gas hydraulic flow model, filed with the Commission in electronic file format, is part of the record in this proceeding). Riverkeeper was given proper access and ample opportunity to review the supporting technical data filed in this proceeding, and its assertions to the contrary should be rejected. *See* Rehearing Order P 34, JA ___; *see also Myersville*, 783 F.3d at 1327 (rejecting a petitioner's claim that it was deprived of a meaningful opportunity to review hydraulic flow diagrams where it was given access prior to rehearing); *Minisink*, 762 F.3d at 115 (same).

## 2. The Commission's Findings Are Not Inconsistent With Its Treatment Of Other Pipelines

Riverkeeper erroneously argues (Br. 57-59) that the Commission treated two pipeline project proposals differently despite "identical factual circumstances."

43

Br. 57.  The case cited by Riverkeeper, *Tennessee Gas Pipeline, Co.*, 139 FERC

¶ 61,161 (2012), is inapposite.  The *Tennessee Gas* case involved the

Commission's rejection of an alternative proposal to add compression, without

looping, to a single, 24-inch diameter pipeline.  *See* Environmental Assessment,

Northeast Upgrade Project, FERC Docket No. CP11-161-000, pg. 3-3 (Nov. 21,

2011) (finding that compression-only alternative would result in gas velocity

"significantly above" maximum design velocity).  In contrast, the Leidy Project is

a 42-inch diameter pipeline system.  *See* Certificate Order P 30, JA ___.

Moreover, the record in this case includes a report demonstrating that the

pipeline could operate safely with gas velocities up to 100 feet per second.  *See*

Certificate Order P 30, JA ___.  As the Commission has explained in addressing

this argument, "every pipeline system is unique."  *Millennium Pipeline Co., L.L.C.*,

142 FERC ¶ 61,077, at PP 11-12 (2013) (distinguishing *Tennessee Gas* because the

pipeline systems are distinct with different design parameters); *see also Columbia*

*Gas Transmission, LLC*, 149 FERC ¶ 61,255, at P 106, n.64 (2014) (rejecting

Riverkeeper's argument that gas velocities will present a threat to pipeline safety).

The Commission's analysis of gas velocity issues is more than adequate here,

where not only are the pipeline systems not identical, the records in the

proceedings are not identical.  *See So. Cal. Edison Co. v. FERC*, 805 F.2d 1068,

1071 (D.C. Cir. 1986) (no need to address agency precedent that does not "squarely control the situation at hand").

As in *Minisink*, where a similar data-based safety argument was raised to this Court, here there is "no basis to second-guess the Commission's determination" and the Court should likewise remain "unmoved." *Minisink*, 762 F.3d at 110.

## CONCLUSION

For the foregoing reasons, the petition for review should be denied and the Commission's orders should be affirmed in all respects.

Respectfully submitted,

Max Minzner
General Counsel

Robert H. Solomon
Solicitor

Holly E. Cafer
Senior Attorney

*/s/ Lisa B. Luftig*
Lisa B. Luftig
Attorney

Federal Energy Regulatory
    Commission
Washington, D.C. 20426
Tel: (202) 502-6791
Fax: (202) 273-0901

August 9, 2016

45

*Delaware Riverkeeper Network v. FERC*              **Docket No. CP13-551-000**
**D.C. Cir. No. 16-1092**

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(C)(i), I certify that the brief of

Respondent Federal Energy Regulatory Commission contains 10,073 words, not

including the tables of contents and authorities, the glossary, the certificates of

counsel, and the addendum.


                                        */s/ Lisa B. Luftig*
                                        Lisa B. Luftig
                                        Attorney


Federal Energy Regulatory
  Commission
888 First Street, N.E.
Washington, D.C. 20426
Phone:  202-502-6791
Fax:      202-273-0901
E-mail:  lisa.luftig@ferc.gov


August 9, 2016

# ADDENDUM
# STATUTES AND REGULATIONS

# TABLE OF CONTENTS

**STATUTES:**                                                                **PAGE**

Administrative Procedure Act

    5 U.S.C. § 706(2)(A) ............................................................... A-1

Clean Water Act

    33 U.S.C. § 1341............................................................... A-3

National Environmental Policy Act

    42 U.S.C. § 4321............................................................... A-5

Natural Gas Act

    15 U.S.C. §§ 717(b),(c) ............................................... A-7

    15 U.S.C. §§ 717f(c),(e) ............................................... A-8

    15 U.S.C. §§ 717r(a),(b) ............................................. A-10

**REGULATIONS:**

    18 C.F.R. § 375.301(a) ............................................... A-12

    18 C.F.R. § 375.308(x) ............................................... A-13

    18 C.F.R. § 385.713............................................... A-18

    18 C.F.R. § 385.1902(a) ....................................... A-20

    40 C.F.R. § 1501.4(e) ............................................... A-21

    40 C.F.R. § 1508.9(b) ............................................... A-22

    40 C.F.R. § 1508.13............................................... A-22

injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 94–574, §1, Oct. 21, 1976, 90 Stat. 2721.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
| --- | --- | --- |
| .................. | 5 U.S.C. 1009(a). | June 11, 1946, ch. 324, §10(a), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

AMENDMENTS

1976—Pub. L. 94–574 removed the defense of sovereign immunity as a bar to judicial review of Federal administrative action otherwise subject to judicial review.

§ 703. Form and venue of proceeding

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 94–574, §1, Oct. 21, 1976, 90 Stat. 2721.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
| --- | --- | --- |
| .................. | 5 U.S.C. 1009(b). | June 11, 1946, ch. 324, §10(b), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

AMENDMENTS

1976—Pub. L. 94–574 provided that if no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer as defendant.

§ 704. Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
| --- | --- | --- |
| .................. | 5 U.S.C. 1009(c). | June 11, 1946, ch. 324, §10(c), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

§ 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
| --- | --- | --- |
| .................. | 5 U.S.C. 1009(d). | June 11, 1946, ch. 324, §10(d), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ................ | 5 U.S.C. 1009(e). | June 11, 1946, ch. 324, §10(e), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

ABBREVIATION OF RECORD

Pub. L. 85–791, Aug. 28, 1958, 72 Stat. 941, which authorized abbreviation of record on review or enforcement of orders of administrative agencies and review on the original papers, provided, in section 35 thereof, that: ''This Act [see Tables for classification] shall not be construed to repeal or modify any provision of the Administrative Procedure Act [see Short Title note set out preceding section 551 of this title].''

## CHAPTER 8—CONGRESSIONAL REVIEW OF AGENCY RULEMAKING

Sec.
801.    Congressional review.
802.    Congressional disapproval procedure.
803.    Special rule on statutory, regulatory, and judicial deadlines.
804.    Definitions.
805.    Judicial review.
806.    Applicability; severability.
807.    Exemption for monetary policy.
808.    Effective date of certain rules.

### § 801. Congressional review

(a)(1)(A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing—

(i) a copy of the rule;

(ii) a concise general statement relating to the rule, including whether it is a major rule; and

(iii) the proposed effective date of the rule.

(B) On the date of the submission of the report under subparagraph (A), the Federal agency promulgating the rule shall submit to the Comptroller General and make available to each House of Congress—

(i) a complete copy of the cost-benefit analysis of the rule, if any;

(ii) the agency's actions relevant to sections 603, 604, 605, 607, and 609;

(iii) the agency's actions relevant to sections 202, 203, 204, and 205 of the Unfunded Mandates Reform Act of 1995; and

(iv) any other relevant information or requirements under any other Act and any relevant Executive orders.

(C) Upon receipt of a report submitted under subparagraph (A), each House shall provide copies of the report to the chairman and ranking member of each standing committee with jurisdiction under the rules of the House of Representatives or the Senate to report a bill to amend the provision of law under which the rule is issued.

(2)(A) The Comptroller General shall provide a report on each major rule to the committees of jurisdiction in each House of the Congress by the end of 15 calendar days after the submission or publication date as provided in section 802(b)(2). The report of the Comptroller General shall include an assessment of the agency's compliance with procedural steps required by paragraph (1)(B).

(B) Federal agencies shall cooperate with the Comptroller General by providing information relevant to the Comptroller General's report under subparagraph (A).

(3) A major rule relating to a report submitted under paragraph (1) shall take effect on the latest of—

(A) the later of the date occurring 60 days after the date on which—

(i) the Congress receives the report submitted under paragraph (1); or

(ii) the rule is published in the Federal Register, if so published;

(B) if the Congress passes a joint resolution of disapproval described in section 802 relating to the rule, and the President signs a veto of such resolution, the earlier date—

(i) on which either House of Congress votes and fails to override the veto of the President; or

(ii) occurring 30 session days after the date on which the Congress received the veto and objections of the President; or

(C) the date the rule would have otherwise taken effect, if not for this section (unless a joint resolution of disapproval under section 802 is enacted).

(4) Except for a major rule, a rule shall take effect as otherwise provided by law after submission to Congress under paragraph (1).

(5) Notwithstanding paragraph (3), the effective date of a rule shall not be delayed by operation of this chapter beyond the date on which either House of Congress votes to reject a joint resolution of disapproval under section 802.

(b)(1) A rule shall not take effect (or continue), if the Congress enacts a joint resolution of disapproval, described under section 802, of the rule.

(2) A rule that does not take effect (or does not continue) under paragraph (1) may not be reissued in substantially the same form, and a new rule that is substantially the same as such a rule may not be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule.

(c)(1) Notwithstanding any other provision of this section (except subject to paragraph (3)), a rule that would not take effect by reason of subsection (a)(3) may take effect, if the President makes a determination under paragraph (2) and submits written notice of such determination to the Congress.

''(7) while the cleanup of Boston Harbor will contribute significantly to improving the overall environmental quality of Massachusetts Bay, expanded efforts encompassing the entire ecosystem will be necessary to ensure its long-term health;

''(8) the concerted efforts of all levels of Government, the private sector, and the public at large will be necessary to protect and enhance the environmental integrity of Massachusetts Bay; and

''(9) the designation of Massachusetts Bay as an Estuary of National Significance and the development of a comprehensive plan for protecting and restoring the Bay may contribute significantly to its long-term health and environmental integrity.

''(b) PURPOSE.—The purpose of this title is to protect and enhance the environmental quality of Massachusetts Bay by providing for its designation as an Estuary of National Significance and by providing for the preparation of a comprehensive restoration plan for the Bay.

''SEC. 1005. FUNDING SOURCES.

''Within one year of enactment [Nov. 14, 1988], the Ad-ministrator of the United States Environmental Pro-tection Agency and the Governor of Massachusetts shall undertake to identify and make available sources of funding to support activities pertaining to Massa-chusetts Bay undertaken pursuant to or authorized by section 320 of the Clean Water Act [33 U.S.C. 1330], and shall make every effort to coordinate existing research, monitoring or control efforts with such activities.''

PURPOSES AND POLICIES OF NATIONAL

ESTUARY PROGRAM

Pub. L. 100–4, title III, §317(a), Feb. 4, 1987, 101 Stat. 61, provided that:

''(1) FINDINGS.—Congress finds and declares that—

''(A) the Nation's estuaries are of great importance for fish and wildlife resources and recreation and eco-nomic opportunity;

''(B) maintaining the health and ecological integrity of these estuaries is in the national interest;

''(C) increasing coastal population, development, and other direct and indirect uses of these estuaries threaten their health and ecological integrity;

''(D) long-term planning and management will contribute to the continued productivity of these areas, and will maximize their utility to the Nation; and

''(E) better coordination among Federal and State programs affecting estuaries will increase the effectiveness and efficiency of the national effort to protect, preserve, and restore these areas.

''(2) PURPOSES.—The purposes of this section [enacting this section] are to—

''(A) identify nationally significant estuaries that are threatened by pollution, development, or overuse;

''(B) promote comprehensive planning for, and conservation and management of, nationally significant estuaries;

''(C) encourage the preparation of management plans for estuaries of national significance; and

''(D) enhance the coordination of estuarine research.''

## SUBCHAPTER IV—PERMITS AND LICENSES

### § 1341. Certification

### (a) Compliance with applicable requirements; application; procedures; license suspension

(1) Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate, or, if appropriate, from the interstate water pollution control agency having jurisdic-

tion over the navigable waters at the point where the discharge originates or will originate, that any such discharge will comply with the applicable provisions of sections 1311, 1312, 1313, 1316, and 1317 of this title. In the case of any such activity for which there is not an applicable effluent limitation or other limitation under sections 1311(b) and 1312 of this title, and there is not an applicable standard under sections 1316 and 1317 of this title, the State shall so certify, except that any such certification shall not be deemed to satisfy section 1371(c) of this title. Such State or interstate agency shall establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications. In any case where a State or interstate agency has no authority to give such a certification, such certification shall be from the Administrator. If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application. No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence. No license or permit shall be granted if certification has been denied by the State, interstate agency, or the Administrator, as the case may be.

(2) Upon receipt of such application and certification the licensing or permitting agency shall immediately notify the Administrator of such application and certification. Whenever such a discharge may affect, as determined by the Administrator, the quality of the waters of any other State, the Administrator within thirty days of the date of notice of application for such Federal license or permit shall so notify such other State, the licensing or permitting agency, and the applicant. If, within sixty days after receipt of such notification, such other State determines that such discharge will affect the quality of its waters so as to violate any water quality requirements in such State, and within such sixty-day period notifies the Administrator and the licensing or permitting agency in writing of its objection to the issuance of such license or permit and requests a public hearing on such objection, the licensing or permitting agency shall hold such a hearing. The Administrator shall at such hearing submit his evaluation and recommendations with respect to any such objection to the licensing or permitting agency. Such agency, based upon the recommendations of such State, the Administrator, and upon any additional evidence, if any, presented to the agency at the hearing, shall condition such license or permit in such manner as may be necessary to insure compliance with applicable water quality requirements. If the imposition of conditions cannot insure such compliance such agency shall not issue such license or permit.

(3) The certification obtained pursuant to paragraph (1) of this subsection with respect to the construction of any facility shall fulfill the

A-3

requirements of this subsection with respect to certification in connection with any other Federal license or permit required for the operation of such facility unless, after notice to the certifying State, agency, or Administrator, as the case may be, which shall be given by the Federal agency to whom application is made for such operating license or permit, the State, or if appropriate, the interstate agency or the Administrator, notifies such agency within sixty days after receipt of such notice that there is no longer reasonable assurance that there will be compliance with the applicable provisions of sections 1311, 1312, 1313, 1316, and 1317 of this title because of changes since the construction license or permit certification was issued in (A) the construction or operation of the facility, (B) the characteristics of the waters into which such discharge is made, (C) the water quality criteria applicable to such waters or (D) applicable effluent limitations or other requirements. This paragraph shall be inapplicable in any case where the applicant for such operating license or permit has failed to provide the certifying State, or, if appropriate, the interstate agency or the Administrator, with notice of any proposed changes in the construction or operation of the facility with respect to which a construction license or permit has been granted, which changes may result in violation of section 1311, 1312, 1313, 1316, or 1317 of this title.

(4) Prior to the initial operation of any federally licensed or permitted facility or activity which may result in any discharge into the navigable waters and with respect to which a certification has been obtained pursuant to paragraph (1) of this subsection, which facility or activity is not subject to a Federal operating license or permit, the licensee or permittee shall provide an opportunity for such certifying State, or, if appropriate, the interstate agency or the Administrator to review the manner in which the facility or activity shall be operated or conducted for the purposes of assuring that applicable effluent limitations or other limitations or other applicable water quality requirements will not be violated. Upon notification by the certifying State, or if appropriate, the interstate agency or the Administrator that the operation of any such federally licensed or permitted facility or activity will violate applicable effluent limitations or other limitations or other water quality requirements such Federal agency may, after public hearing, suspend such license or permit. If such license or permit is suspended, it shall remain suspended until notification is received from the certifying State, agency, or Administrator, as the case may be, that there is reasonable assurance that such facility or activity will not violate the applicable provisions of section 1311, 1312, 1313, 1316, or 1317 of this title.

(5) Any Federal license or permit with respect to which a certification has been obtained under paragraph (1) of this subsection may be suspended or revoked by the Federal agency issuing such license or permit upon the entering of a judgment under this chapter that such facility or activity has been operated in violation of the applicable provisions of section 1311, 1312, 1313, 1316, or 1317 of this title.

(6) Except with respect to a permit issued under section 1342 of this title, in any case where actual construction of a facility has been lawfully commenced prior to April 3, 1970, no certification shall be required under this subsection for a license or permit issued after April 3, 1970, to operate such facility, except that any such license or permit issued without certification shall terminate April 3, 1973, unless prior to such termination date the person having such license or permit submits to the Federal agency which issued such license or permit a certification and otherwise meets the requirements of this section.

(b) **Compliance with other provisions of law setting applicable water quality requirements**

Nothing in this section shall be construed to limit the authority of any department or agency pursuant to any other provision of law to require compliance with any applicable water quality requirements. The Administrator shall, upon the request of any Federal department or agency, or State or interstate agency, or applicant, provide, for the purpose of this section, any relevant information on applicable effluent limitations, or other limitations, standards, regulations, or requirements, or water quality criteria, and shall, when requested by any such department or agency or State or interstate agency, or applicant, comment on any methods to comply with such limitations, standards, regulations, requirements, or criteria.

(c) **Authority of Secretary of the Army to permit use of spoil disposal areas by Federal licensees or permittees**

In order to implement the provisions of this section, the Secretary of the Army, acting through the Chief of Engineers, is authorized, if he deems it to be in the public interest, to permit the use of spoil disposal areas under his jurisdiction by Federal licensees or permittees, and to make an appropriate charge for such use. Moneys received from such licensees or permittees shall be deposited in the Treasury as miscellaneous receipts.

(d) **Limitations and monitoring requirements of certification**

Any certification provided under this section shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations and other limitations, under section 1311 or 1312 of this title, standard of performance under section 1316 of this title, or prohibition, effluent standard, or pretreatment standard under section 1317 of this title, and with any other appropriate requirement of State law set forth in such certification, and shall become a condition on any Federal license or permit subject to the provisions of this section.

(June 30, 1948, ch. 758, title IV, § 401, as added Pub. L. 92–500, § 2, Oct. 18, 1972, 86 Stat. 877; amended Pub. L. 95–217, §§ 61(b), 64, Dec. 27, 1977, 91 Stat. 1598, 1599.)

AMENDMENTS

1977—Subsec. (a). Pub. L. 95–217 inserted reference to section 1313 of this title in pars. (1), (3), (4), and (5), struck out par. (6) which provided that no Federal

Congress shall consider the amount of any funds received by the Commission in addition to those funds appropriated to it by the Congress.

(Pub. L. 86–380, §9, as added Pub. L. 89–733, §6, Nov. 2, 1966, 80 Stat. 1162.)

CODIFICATION

Section was formerly classified to section 2379 of Title 5 prior to the general revision and enactment of Title 5, Government Organization and Employees, by Pub. L. 89–554, §1, Sept. 6, 1966, 80 Stat. 378.

## CHAPTER 54—CABINET COMMITTEE ON OP-PORTUNITIES FOR SPANISH-SPEAKING PEOPLE

### §§ 4301 to 4312. Omitted

CODIFICATION

Sections 4301 to 4312 of this title, Pub. L. 91–181, §§1–12, Dec. 30, 1969, 83 Stat. 838, were omitted pursuant to section 4312 of this title which provided that Pub. L. 91–181 shall expire five years after Dec. 30, 1969.

Section 4301, Pub. L. 91–181, §1, Dec. 30, 1969, 83 Stat. 838, related to Congressional declaration of purpose.

Section 4302, Pub. L. 91–181, §2, Dec. 30, 1969, 83 Stat. 838, related to establishment of Cabinet Committee on Opportunities for Spanish-Speaking People, its composition, appointment of Chairman.

Section 4303, Pub. L. 91–181, §3, Dec. 30, 1969, 83 Stat. 838, related to functions of Committee.

Section 4304, Pub. L. 91–181, §4, Dec. 30, 1969, 83 Stat. 839, related to administrative powers of the Committee.

Section 4305, Pub. L. 91–181, §5, Dec. 30, 1969, 83 Stat. 839, related to utilization of services and facilities of governmental agencies.

Section 4306, Pub. L. 91–181, §6, Dec. 30, 1969, 83 Stat. 839, related to compensation of personnel and transfer of personnel from other Federal departments and agencies.

Section 4307, Pub. L. 91–181, §7, Dec. 30, 1969, 83 Stat. 839, related to establishment of an Advisory Council on Spanish-Speaking Americans.

Section 4308, Pub. L. 91–181, §8, Dec. 30, 1969, 83 Stat. 840, related to nonimpairment of existing powers of other Federal departments and agencies.

Section 4309, Pub. L. 91–181, §9, Dec. 30, 1969, 83 Stat. 840, related to restrictions on political activities of Committee and Advisory Council.

Section 4310, Pub. L. 91–181, §10, Dec. 30, 1969, 83 Stat. 840; Pub. L. 92–122, Aug. 16, 1971, 85 Stat. 342, related to authorization of appropriations.

Section 4311, Pub. L. 91–181, §11, Dec. 30, 1969, 83 Stat. 840, related to submission of reports to the President and Congress.

Section 4312, Pub. L. 91–181, §12, Dec. 30, 1969, 83 Stat. 840, provided that this chapter shall expire five years after Dec. 30, 1969.

## CHAPTER 55—NATIONAL ENVIRONMENTAL POLICY

Sec.
4321.    Congressional declaration of purpose.

SUBCHAPTER I—POLICIES AND GOALS

4331.    Congressional declaration of national environmental policy.
4332.    Cooperation of agencies; reports; availability of information; recommendations; international and national coordination of efforts.
4332a.    Accelerated decisionmaking in environmental reviews.
4333.    Conformity of administrative procedures to national environmental policy.
4334.    Other statutory obligations of agencies.
4335.    Efforts supplemental to existing authorizations.

SUBCHAPTER II—COUNCIL ON ENVIRONMENTAL QUALITY

4341.    Omitted.
4342.    Establishment; membership; Chairman; appointments.
4343.    Employment of personnel, experts and consultants.
4344.    Duties and functions.
4345.    Consultation with Citizens' Advisory Committee on Environmental Quality and other representatives.
4346.    Tenure and compensation of members.
4346a.    Travel reimbursement by private organizations and Federal, State, and local governments.
4346b.    Expenditures in support of international activities.
4347.    Authorization of appropriations.

SUBCHAPTER III—MISCELLANEOUS PROVISIONS

4361, 4361a. Repealed.
4361b.    Implementation by Administrator of Environmental Protection Agency of recommendations of "CHESS" Investigative Report; waiver; inclusion of status of implementation requirements in annual revisions of plan for research, development, and demonstration.
4361c.    Staff management.
4362.    Interagency cooperation on prevention of environmental cancer and heart and lung disease.
4362a.    Membership of Task Force on Environmental Cancer and Heart and Lung Disease.
4363.    Continuing and long-term environmental research and development.
4363a.    Pollution control technologies demonstrations.
4364.    Expenditure of funds for research and development related to regulatory program activities.
4365.    Science Advisory Board.
4366.    Identification and coordination of research, development, and demonstration activities.
4366a.    Omitted.
4367.    Reporting requirements of financial interests of officers and employees of Environmental Protection Agency.
4368.    Grants to qualified citizens groups.
4368a.    Utilization of talents of older Americans in projects of pollution prevention, abatement, and control.
4368b.    General assistance program.
4369.    Miscellaneous reports.
4369a.    Reports on environmental research and development activities of Agency.
4370.    Reimbursement for use of facilities.
4370a.    Assistant Administrators of Environmental Protection Agency; appointment; duties.
4370b.    Availability of fees and charges to carry out Agency programs.
4370c.    Environmental Protection Agency fees.
4370d.    Percentage of Federal funding for organizations owned by socially and economically disadvantaged individuals.
4370e.    Working capital fund in Treasury.
4370f.    Availability of funds after expiration of period for liquidating obligations.
4370g.    Availability of funds for uniforms and certain services.
4370h.    Availability of funds for facilities.

## § 4321. Congressional declaration of purpose

The purposes of this chapter are: To declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will pre-

vent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality.

(Pub. L. 91–190, §2, Jan. 1, 1970, 83 Stat. 852.)

### Short Title

Section 1 Pub. L. 91–190 provided: "That this Act [enacting this chapter] may be cited as the 'National Environmental Policy Act of 1969'."

### Transfer of Functions

Enforcement functions of Secretary or other official in Department of the Interior related to compliance with system activities requiring coordination and approval under this chapter, and enforcement functions of Secretary or other official in Department of Agriculture, insofar as they involve lands and programs under jurisdiction of that Department, related to compliance with this chapter with respect to pre-construction, construction, and initial operation of transportation system for Canadian and Alaskan natural gas transferred to Federal Inspector, Office of Federal Inspector for the Alaska Natural Gas Transportation System, until first anniversary of date of initial operation of Alaska Natural Gas Transportation System, see Reorg. Plan No. 1 of 1979, §§102(e), (f), 203(a), 44 F.R. 33663, 33666, 93 Stat. 1373, 1376, effective July 1, 1979, set out in the Appendix to Title 5, Government Organization and Employees. Office of Federal Inspector for the Alaska Natural Gas Transportation System abolished and functions and authority vested in Inspector transferred to Secretary of Energy by section 3012(b) of Pub. L. 102–486, set out as an Abolition of Office of Federal Inspector note under section 719e of Title 15, Commerce and Trade. Functions and authority vested in Secretary of Energy subsequently transferred to Federal Coordinator for Alaska Natural Gas Transportation Projects by section 720d(f) of Title 15.

### Emergency Preparedness Functions

For assignment of certain emergency preparedness functions to Administrator of Environmental Protection Agency, see Parts 1, 2, and 16 of Ex. Ord. No. 12656, Nov. 18, 1988, 53 F.R. 47491, set out as a note under section 5195 of this title.

### Environmental Protection Agency Headquarters

Pub. L. 112–237, §2, Dec. 28, 2012, 126 Stat. 1628, provided that:

"(a) Redesignation.—The Environmental Protection Agency Headquarters located at 1200 Pennsylvania Avenue N.W. in Washington, D.C., known as the Ariel Rios Building, shall be known and redesignated as the 'William Jefferson Clinton Federal Building'.

"(b) References.—Any reference in a law, map, regulation, document, paper, or other record of the United States to the Environmental Protection Agency Headquarters referred to in subsection (a) shall be deemed to be a reference to the 'William Jefferson Clinton Federal Building'."

### Modification or Replacement of Executive Order No. 13423

Pub. L. 111–117, div. C, title VII, §742(b), Dec. 16, 2009, 123 Stat. 3216, provided that: "Hereafter, the President may modify or replace Executive Order No. 13423 [set out as a note under this section] if the President determines that a revised or new executive order will achieve equal or better environmental or energy efficiency results."

Pub. L. 111–8, div. D, title VII, §748, Mar. 11, 2009, 123 Stat. 693, which provided that Ex. Ord. No. 13423 (set out as a note under this section) would remain in effect on and after Mar. 11, 2009, except as otherwise provided by law after Mar. 11, 2009, was repealed by Pub. L. 111–117, div. C, title VII, §742(c), Dec. 16, 2009, 123 Stat. 3216.

### Necessity of Military Low-Level Flight Training To Protect National Security and Enhance Military Readiness

Pub. L. 106–398, §1 [[div. A], title III, §317], Oct. 30, 2000, 114 Stat. 1654, 1654A–57, provided that: "Nothing in the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) or the regulations implementing such law shall require the Secretary of Defense or the Secretary of a military department to prepare a programmatic, nation-wide environmental impact statement for low-level flight training as a precondition to the use by the Armed Forces of an airspace for the performance of low-level training flights."

### Pollution Prosecution

Pub. L. 101–593, title II, Nov. 16, 1990, 104 Stat. 2962, provided that:

"SEC. 201. SHORT TITLE.

"This title may be cited as the 'Pollution Prosecution Act of 1990'.

"SEC. 202. EPA OFFICE OF CRIMINAL INVESTIGATION.

"(a) The Administrator of the Environmental Protection Agency (hereinafter referred to as the 'Administrator') shall increase the number of criminal investigators assigned to the Office of Criminal Investigations by such numbers as may be necessary to assure that the number of criminal investigators assigned to the office—

"(1) for the period October 1, 1991, through September 30, 1992, is not less than 72;

"(2) for the period October 1, 1992, through September 30, 1993, is not less than 110;

"(3) for the period October 1, 1993, through September 30, 1994, is not less than 123;

"(4) for the period October 1, 1994, through September 30, 1995, is not less than 160;

"(5) beginning October 1, 1995, is not less than 200.

"(b) For fiscal year 1991 and in each of the following 4 fiscal years, the Administrator shall, during each such fiscal year, provide increasing numbers of additional support staff to the Office of Criminal Investigations.

"(c) The head of the Office of Criminal Investigations shall be a position in the competitive service as defined in 2102 of title 5 U.S.C. or a career reserve [reserved] position as defined in 3132(A) [3132(a)] of title 5 U.S.C. and the head of such office shall report directly, without intervening review or approval, to the Assistant Administrator for Enforcement.

"SEC. 203. CIVIL INVESTIGATORS.

"The Administrator, as soon as practicable following the date of the enactment of this Act [Nov. 16, 1990], but no later than September 30, 1991, shall increase by fifty the number of civil investigators assigned to assist the Office of Enforcement in developing and prosecuting civil and administrative actions and carrying out its other functions.

"SEC. 204. NATIONAL TRAINING INSTITUTE.

"The Administrator shall, as soon as practicable but no later than September 30, 1991 establish within the Office of Enforcement the National Enforcement Training Institute. It shall be the function of the Institute, among others, to train Federal, State, and local lawyers, inspectors, civil and criminal investigators, and technical experts in the enforcement of the Nation's environmental laws.

"SEC. 205. AUTHORIZATION.

"For the purposes of carrying out the provisions of this Act [probably should be "this title"], there is authorized to be appropriated to the Environmental Protection Agency $13,000,000 for fiscal year 1991, $18,000,000

Sec.
717a.    Definitions.
717b.    Exportation or importation of natural gas; LNG terminals.
717b–1.    State and local safety considerations.
717c.    Rates and charges.
717c–1.    Prohibition on market manipulation.
717d.    Fixing rates and charges; determination of cost of production or transportation.
717e.    Ascertainment of cost of property.
717f.    Construction, extension, or abandonment of facilities.
717g.    Accounts; records; memoranda.
717h.    Rates of depreciation.
717i.    Periodic and special reports.
717j.    State compacts for conservation, transportation, etc., of natural gas.
717k.    Officials dealing in securities.
717l.    Complaints.
717m.    Investigations by Commission.
717n.    Process coordination; hearings; rules of procedure.
717o.    Administrative powers of Commission; rules, regulations, and orders.
717p.    Joint boards.
717q.    Appointment of officers and employees.
717r.    Rehearing and review.
717s.    Enforcement of chapter.
717t.    General penalties.
717t–1.    Civil penalty authority.
717t–2.    Natural gas market transparency rules.
717u.    Jurisdiction of offenses; enforcement of liabilities and duties.
717v.    Separability.
717w.    Short title.
717x.    Conserved natural gas.
717y.    Voluntary conversion of natural gas users to heavy fuel oil.
717z.    Emergency conversion of utilities and other facilities.

## § 717. Regulation of natural gas companies

**(a) Necessity of regulation in public interest**

As disclosed in reports of the Federal Trade Commission made pursuant to S. Res. 83 (Seventieth Congress, first session) and other reports made pursuant to the authority of Congress, it is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest.

**(b) Transactions to which provisions of chapter applicable**

The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, and to the importation or exportation of natural gas in foreign commerce and to persons engaged in such importation or exportation, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.

**(c) Intrastate transactions exempt from provisions of chapter; certification from State commission as conclusive evidence**

The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States. A certification from such State commission to the Federal Power Commission that such State commission has regulatory jurisdiction over rates and service of such person and facilities and is exercising such jurisdiction shall constitute conclusive evidence of such regulatory power or jurisdiction.

**(d) Vehicular natural gas jurisdiction**

The provisions of this chapter shall not apply to any person solely by reason of, or with respect to, any sale or transportation of vehicular natural gas if such person is—

(1) not otherwise a natural-gas company; or
(2) subject primarily to regulation by a State commission, whether or not such State commission has, or is exercising, jurisdiction over the sale, sale for resale, or transportation of vehicular natural gas.

(June 21, 1938, ch. 556, §1, 52 Stat. 821; Mar. 27, 1954, ch. 115, 68 Stat. 36; Pub. L. 102–486, title IV, §404(a)(1), Oct. 24, 1992, 106 Stat. 2879; Pub. L. 109–58, title III, §311(a), Aug. 8, 2005, 119 Stat. 685.)

AMENDMENTS

2005—Subsec. (b). Pub. L. 109–58 inserted "and to the importation or exportation of natural gas in foreign commerce and to persons engaged in such importation or exportation," after "such transportation or sale,".

1992—Subsec. (d). Pub. L. 102–486 added subsec. (d).

1954—Subsec. (c). Act Mar. 27, 1954, added subsec. (c).

TERMINATION OF FEDERAL POWER
COMMISSION; TRANSFER OF FUNCTIONS

Federal Power Commission terminated and functions, personnel, property, funds, etc., transferred to Secretary of Energy (except for certain functions transferred to Federal Energy Regulatory Commission) by sections 7151(b), 7171(a), 7172(a), 7291, and 7293 of Title 42, The Public Health and Welfare.

STATE LAWS AND REGULATIONS

Pub. L. 102–486, title IV, §404(b), Oct. 24, 1992, 106 Stat. 2879, provided that: "The transportation or sale of natural gas by any person who is not otherwise a public utility, within the meaning of State law—

"(1) in closed containers; or
"(2) otherwise to any person for use by such person as a fuel in a self-propelled vehicle,

shall not be considered to be a transportation or sale of natural gas within the meaning of any State law, regulation, or order in effect before January 1, 1989. This subsection shall not apply to any provision of any State law, regulation, or order to the extent that such provision has as its primary purpose the protection of public safety."

EMERGENCY NATURAL GAS ACT OF 1977

Pub. L. 95–2, Feb. 2, 1977, 91 Stat. 4, authorized President to declare a natural gas emergency and to require

A-7

therein; and, when found necessary for rate-making purposes, other facts which bear on the determination of such cost or depreciation and the fair value of such property.

**(b) Inventory of property; statements of costs**

Every natural-gas company upon request shall file with the Commission an inventory of all or any part of its property and a statement of the original cost thereof, and shall keep the Commission informed regarding the cost of all additions, betterments, extensions, and new construction.

(June 21, 1938, ch. 556, §6, 52 Stat. 824.)

### § 717f. Construction, extension, or abandonment of facilities

**(a) Extension or improvement of facilities on order of court; notice and hearing**

Whenever the Commission, after notice and opportunity for hearing, finds such action necessary or desirable in the public interest, it may by order direct a natural-gas company to extend or improve its transportation facilities, to establish physical connection of its transportation facilities with the facilities of, and sell natural gas to, any person or municipality engaged or legally authorized to engage in the local distribution of natural or artificial gas to the public, and for such purpose to extend its transportation facilities to communities immediately adjacent to such facilities or to territory served by such natural-gas company, if the Commission finds that no undue burden will be placed upon such natural-gas company thereby: *Provided,* That the Commission shall have no authority to compel the enlargement of transportation facilities for such purposes, or to compel such natural-gas company to establish physical connection or sell natural gas when to do so would impair its ability to render adequate service to its customers.

**(b) Abandonment of facilities or services; approval of Commission**

No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.

**(c) Certificate of public convenience and necessity**

(1)(A) No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations: *Provided,*

*however,* That if any such natural-gas company or predecessor in interest was bona fide engaged in transportation or sale of natural gas, subject to the jurisdiction of the Commission, on February 7, 1942, over the route or routes or within the area for which application is made and has so operated since that time, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate is made to the Commission within ninety days after February 7, 1942. Pending the determination of any such application, the continuance of such operation shall be lawful.

(B) In all other cases the Commission shall set the matter for hearing and shall give such reasonable notice of the hearing thereon to all interested persons as in its judgment may be necessary under rules and regulations to be prescribed by the Commission; and the application shall be decided in accordance with the procedure provided in subsection (e) of this section and such certificate shall be issued or denied accordingly: *Provided, however,* That the Commission may issue a temporary certificate in cases of emergency, to assure maintenance of adequate service or to serve particular customers, without notice or hearing, pending the determination of an application for a certificate, and may by regulation exempt from the requirements of this section temporary acts or operations for which the issuance of a certificate will not be required in the public interest.

(2) The Commission may issue a certificate of public convenience and necessity to a natural-gas company for the transportation in interstate commerce of natural gas used by any person for one or more high-priority uses, as defined, by rule, by the Commission, in the case of—

(A) natural gas sold by the producer to such person; and

(B) natural gas produced by such person.

**(d) Application for certificate of public convenience and necessity**

Application for certificates shall be made in writing to the Commission, be verified under oath, and shall be in such form, contain such information, and notice thereof shall be served upon such interested parties and in such manner as the Commission shall, by regulation, require.

**(e) Granting of certificate of public convenience and necessity**

Except in the cases governed by the provisos contained in subsection (c)(1) of this section, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale, service, construction, extension, or acquisition covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. The Commission shall

have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require.

**(f) Determination of service area; jurisdiction of transportation to ultimate consumers**

(1) The Commission, after a hearing had upon its own motion or upon application, may determine the service area to which each authorization under this section is to be limited. Within such service area as determined by the Commission a natural-gas company may enlarge or extend its facilities for the purpose of supplying increased market demands in such service area without further authorization; and

(2) If the Commission has determined a service area pursuant to this subsection, transportation to ultimate consumers in such service area by the holder of such service area determination, even if across State lines, shall be subject to the exclusive jurisdiction of the State commission in the State in which the gas is consumed. This section shall not apply to the transportation of natural gas to another natural gas company.

**(g) Certificate of public convenience and necessity for service of area already being served**

Nothing contained in this section shall be construed as a limitation upon the power of the Commission to grant certificates of public convenience and necessity for service of an area already being served by another natural-gas company.

**(h) Right of eminent domain for construction of pipelines, etc.**

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

(June 21, 1938, ch. 556, § 7, 52 Stat. 824; Feb. 7, 1942, ch. 49, 56 Stat. 83; July 25, 1947, ch. 333, 61 Stat. 459; Pub. L. 95–617, title VI, § 608, Nov. 9, 1978, 92 Stat. 3173; Pub. L. 100–474, § 2, Oct. 6, 1988, 102 Stat. 2302.)

AMENDMENTS

1988—Subsec. (f). Pub. L. 100–474 designated existing provisions as par. (1) and added par. (2).

1978—Subsec. (c). Pub. L. 95–617, § 608(a), (b)(1), designated existing first paragraph as par. (1)(A) and existing second paragraph as par. (1)(B) and added par. (2).

Subsec. (e). Pub. L. 95–617, § 608(b)(2), substituted "subsection (c)(1)" for "subsection (c)".

1947—Subsec. (h). Act July 25, 1947, added subsec. (h).

1942—Subsecs. (c) to (g). Act Feb. 7, 1942, struck out subsec. (c), and added new subsecs. (c) to (g).

EFFECTIVE DATE OF 1988 AMENDMENT

Pub. L. 100–474, § 3, Oct. 6, 1988, 102 Stat. 2302, provided that: "The provisions of this Act [amending this section and enacting provisions set out as a note under section 717w of this title] shall become effective one hundred and twenty days after the date of enactment [Oct. 6, 1988]."

TRANSFER OF FUNCTIONS

Enforcement functions of Secretary or other official in Department of Energy and Commission, Commissioners, or other official in Federal Energy Regulatory Commission related to compliance with certificates of public convenience and necessity issued under this section with respect to pre-construction, construction, and initial operation of transportation system for Canadian and Alaskan natural gas transferred to Federal Inspector, Office of Federal Inspector for Alaska Natural Gas Transportation System, until first anniversary of date of initial operation of Alaska Natural Gas Transportation System, see Reorg. Plan No. 1 of 1979, §§ 102(d), 203(a), 44 F.R. 33663, 33666, 93 Stat. 1373, 1376, effective July 1, 1979, set out under section 719e of this title. Office of Federal Inspector for the Alaska Natural Gas Transportation System abolished and functions and authority vested in Inspector transferred to Secretary of Energy by section 3012(b) of Pub. L. 102–486, set out as an Abolition of Office of Federal Inspector note under section 719e of this title. Functions and authority vested in Secretary of Energy subsequently transferred to Federal Coordinator for Alaska Natural Gas Transportation Projects by section 720d(f) of this title.

## § 717g. Accounts; records; memoranda

**(a) Rules and regulations for keeping and preserving accounts, records, etc.**

Every natural-gas company shall make, keep, and preserve for such periods, such accounts, records of cost-accounting procedures, correspondence, memoranda, papers, books, and other records as the Commission may by rules and regulations prescribe as necessary or appropriate for purposes of the administration of this chapter: *Provided, however,* That nothing in this chapter shall relieve any such natural-gas company from keeping any accounts, memoranda, or records which such natural-gas company may be required to keep by or under authority of the laws of any State. The Commission may prescribe a system of accounts to be kept by such natural-gas companies, and may classify such natural-gas companies and prescribe a system of accounts for each class. The Commission, after notice and opportunity for hearing, may determine by order the accounts in which particular outlays or receipts shall be entered, charged, or credited. The burden of proof to justify every accounting entry questioned by the Commission shall be on the person making, authorizing, or requiring such entry, and the Commission may suspend a charge or credit pending submission of satisfactory proof in support thereof.

**(b) Access to and inspection of accounts and records**

The Commission shall at all times have access to and the right to inspect and examine all ac-

**(b) Conference with State commissions regarding rate structure, costs, etc.**

The Commission may confer with any State commission regarding rate structures, costs, accounts, charges, practices, classifications, and regulations of natural-gas companies; and the Commission is authorized, under such rules and regulations as it shall prescribe, to hold joint hearings with any State commission in connection with any matter with respect to which the Commission is authorized to act. The Commission is authorized in the administration of this chapter to avail itself of such cooperation, services, records, and facilities as may be afforded by any State commission.

**(c) Information and reports available to State commissions**

The Commission shall make available to the several State commissions such information and reports as may be of assistance in State regulation of natural-gas companies. Whenever the Commission can do so without prejudice to the efficient and proper conduct of its affairs, it may, upon request from a State commission, make available to such State commission as witnesses any of its trained rate, valuation, or other experts, subject to reimbursement of the compensation and traveling expenses of such witnesses. All sums collected hereunder shall be credited to the appropriation from which the amounts were expended in carrying out the provisions of this subsection.

(June 21, 1938, ch. 556, § 17, 52 Stat. 830.)

## § 717q. Appointment of officers and employees

The Commission is authorized to appoint and fix the compensation of such officers, attorneys, examiners, and experts as may be necessary for carrying out its functions under this chapter; and the Commission may, subject to civil-service laws, appoint such other officers and employees as are necessary for carrying out such functions and fix their salaries in accordance with chapter 51 and subchapter III of chapter 53 of title 5.

(June 21, 1938, ch. 556, § 18, 52 Stat. 831; Oct. 28, 1949, ch. 782, title XI, § 1106(a), 63 Stat. 972.)

CODIFICATION

Provisions that authorized the Commission to appoint and fix the compensation of such officers, attorneys, examiners, and experts as may be necessary for carrying out its functions under this chapter ''without regard to the provisions of other laws applicable to the employment and compensation of officers and employees of the United States'' are omitted as obsolete and superseded.

As to the compensation of such personnel, sections 1202 and 1204 of the Classification Act of 1949, 63 Stat. 972, 973, repealed the Classification Act of 1923 and all other laws or parts of laws inconsistent with the 1949 Act. The Classification Act of 1949 was repealed by Pub. L. 89–554, Sept. 6, 1966, § 8(a), 80 Stat. 632, and reenacted as chapter 51 and subchapter III of chapter 53 of Title 5, Government Organization and Employees. Section 5102 of Title 5 contains the applicability provisions of the 1949 Act, and section 5103 of Title 5 authorizes the Office of Personnel Management to determine the applicability to specific positions and employees.

Such appointments are now subject to the civil service laws unless specifically excepted by those laws or by laws enacted subsequent to Executive Order 8743, Apr. 23, 1941, issued by the President pursuant to the Act of Nov. 26, 1940, ch. 919, title I, § 1, 54 Stat. 1211, which covered most excepted positions into the classified (competitive) civil service. The Order is set out as a note under section 3301 of Title 5.

''Chapter 51 and subchapter III of chapter 53 of title 5'' substituted in text for ''the Classification Act of 1949, as amended'' on authority of Pub. L. 89–554, § 7(b), Sept. 6, 1966, 80 Stat. 631, the first section of which enacted Title 5.

AMENDMENTS

1949—Act Oct. 28, 1949, substituted ''Classification Act of 1949'' for ''Classification Act of 1923''.

REPEALS

Act Oct. 28, 1949, ch. 782, cited as a credit to this section, was repealed (subject to a savings clause) by Pub. L. 89–554, Sept. 6, 1966, § 8, 80 Stat. 632, 655.

## § 717r. Rehearing and review

**(a) Application for rehearing; time**

Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b) of this section, the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

**(b) Review of Commission order**

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with

it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings, which is supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

**(c) Stay of Commission order**

The filing of an application for rehearing under subsection (a) of this section shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

**(d) Judicial review**

**(1) In general**

The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.).

**(2) Agency delay**

The United States Court of Appeals for the District of Columbia shall have original and exclusive jurisdiction over any civil action for the review of an alleged failure to act by a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.), for a facility subject to section 717b of this title or section 717f of this

title. The failure of an agency to take action on a permit required under Federal law, other than the Coastal Zone Management Act of 1972, in accordance with the Commission schedule established pursuant to section 717n(c) of this title shall be considered inconsistent with Federal law for the purposes of paragraph (3).

**(3) Court action**

If the Court finds that such order or action is inconsistent with the Federal law governing such permit and would prevent the construction, expansion, or operation of the facility subject to section 717b of this title or section 717f of this title, the Court shall remand the proceeding to the agency to take appropriate action consistent with the order of the Court. If the Court remands the order or action to the Federal or State agency, the Court shall set a reasonable schedule and deadline for the agency to act on remand.

**(4) Commission action**

For any action described in this subsection, the Commission shall file with the Court the consolidated record of such order or action to which the appeal hereunder relates.

**(5) Expedited review**

The Court shall set any action brought under this subsection for expedited consideration.

(June 21, 1938, ch. 556, §19, 52 Stat. 831; June 25, 1948, ch. 646, §32(a), 62 Stat. 991; May 24, 1949, ch. 139, §127, 63 Stat. 107; Pub. L. 85–791, §19, Aug. 28, 1958, 72 Stat. 947; Pub. L. 109–58, title III, §313(b), Aug. 8, 2005, 119 Stat. 689.)

REFERENCES IN TEXT

The Coastal Zone Management Act of 1972, referred to in subsec. (d)(1), (2), is title III of Pub. L. 89–454, as added by Pub. L. 92–583, Oct. 27, 1972, 86 Stat. 1280, as amended, which is classified generally to chapter 33 (§1451 et seq.) of Title 16, Conservation. For complete classification of this Act to the Code, see Short Title note set out under section 1451 of Title 16 and Tables.

CODIFICATION

In subsec. (b), "section 1254 of title 28" substituted for "sections 239 and 240 of the Judicial Code, as amend-ed [28 U.S.C. 346, 347]" on authority of act June 25, 1948, ch. 646, 62 Stat. 869, the first section of which enacted Title 28, Judiciary and Judicial Procedure.

AMENDMENTS

2005—Subsec. (d). Pub. L. 109–58 added subsec. (d).
1958—Subsec. (a). Pub. L. 85–791, §19(a), inserted sentence providing that until record in a proceeding has been filed in a court of appeals, Commission may modify or set aside any finding or order issued by it.
Subsec. (b). Pub. L. 85–791, §19(b), in second sentence, substituted "transmitted by the clerk of the court to" for "served upon", substituted "file with the court" for "certify and file with the court a transcript of", and inserted "as provided in section 2112 of title 28", and, in third sentence, substituted "petition" for "transcript", and "jurisdiction, which upon the filing of the record with it shall be exclusive" for "exclusive jurisdiction".

CHANGE OF NAME

Act June 25, 1948, eff. Sept. 1, 1948, as amended by act May 24, 1949, substituted "court of appeals" for "circuit court of appeals" wherever appearing.

(2) The Secretary shall maintain a complete verbatim copy of the transcript, a complete copy of the minutes, or a complete electronic recording of each meeting, or portion of a meeting, closed to the public, for a period of at least two years after such meeting, or until one year after the conclusion of any Commission proceeding with respect to which the meeting or portion was held, whichever occurs later.

(f) *Public availability of transcripts, records, minutes.* (1) Within a reasonable time after the adjournment of a meeting closed to the public, the Commission shall make available to the public, in the Division of Public Information of the Commission, Washington, DC, the transcript, electronic recording, or minutes of the discussion of any item on the agenda, or of any item of the testimony of any witness received at the meeting, except for such item or items of such discussion or testimony as the Director of Public Information determines may be withheld under § 375.204. Copies of such transcript, or minutes, or a transcription of such recording shall be furnished to any person at the actual cost of duplication or transcription.

(2) The determination of the Director of the Division of Public Information to withhold information pursuant to paragraph (f)(1) of this section may be appealed to the General Counsel or the General Counsel's designee, in accordance with § 388.107 of this chapter.

[45 FR 21217, Apr. 1, 1980, as amended at 52 FR 7825, Mar. 13, 1987]

## Subpart C—Delegations

### § 375.301   Purpose and subdelegations.

(a) The purpose of this subpart is to set forth the authorities that the Commission has delegated to staff officials. Any action by a staff official under the authority of this subpart may be appealed to the Commission in accordance with § 385.1902 of this chapter.

(b) Where the Commission, in delegating functions to specified Commission officials, permits an official to further delegate those functions to a designee of such official, *designee* shall mean the deputy of such official, the head of a division, or a comparable offi-

cial as designated by the official to whom the direct delegation is made.

(c) For purposes of Subpart C, *uncontested* and *in uncontested cases* mean that no motion to intervene, or notice of intervention, in opposition to the pending matter made under § 385.214 (intervention) has been received by the Commission.

[Order 112, 45 FR 79025, Nov. 28, 1980, as amended by Order 225, 47 FR 19058, May 3, 1982; Order 492, 53 FR 16062, May 5, 1988]

### § 375.302   Delegations to the Secretary.

The Commission authorizes the Secretary, or the Secretary's designee to:

(a) Sign official general correspondence on behalf of the Commission, except as otherwise provided in this section.

(b) Prescribe, for good cause, a different time than that required by the Commission's Rules of Practice and Procedure or Commission order for filing by public utilities, licensees, natural gas companies, and other persons of answers to complaints, petitions, motions, and other documents.

(c) Schedule hearings and issue notices thereof.

(d) Accept for filing notices of intervention and petitions to intervene by commissions and agencies of the States and the Federal government.

(e) Pass upon motions to intervene before a presiding administrative law judge is designated. If a presiding administrative law judge has been designated, the provisions of § 385.504(b)(12) of this chapter are controlling.

(f) Deny motions for extensions of time (other than motions made while a proceeding is pending before a presiding officer as defined in § 385.102(e)), except that such motions may be granted in accordance with § 385.2008 of this chapter.

(g) Reject any documents filed later than the time prescribed by an order or rule of the Commission, except that such documents may be accepted in accordance with § 385.2008 of this chapter.

(h) Reject any documents filed that do not meet the requirements of the Commission's rules which govern matters of form, except that such documents may be accepted in accordance with § 385.2001 of this chapter for good cause shown.

(9) *Natural Gas Policy Act of 1978.* (i) Notify jurisdictional agencies within 45 days after the date on which the Commission receives notice of a determination pursuant to § 270.502(b) of this chapter that the notice is incomplete under § 270.204 of this chapter;

(ii) Issue preliminary findings under § 270.502(a)(1) of this chapter;

(iii) Accept any uncontested item that has been filed under § 284.123 of this chapter consistent with Commission regulations and policy;

(iv) Reject an application filed pursuant to § 284.123 of this chapter, unless accompanied by a request for waiver in conformity with § 385.2001 of this chapter, if it fails patently to comply with applicable statutory requirements or Commission rules, regulations and orders; and

(v) Take appropriate action on petitions to permit after an initial 60-day period one additional 60-day period of exemption pursuant to § 284.264(b) of this chapter where the application for extension arrives at the Commission no later than 45 days after the commencement of the initial period of exemption and where only services are involved.

(10) *Regulation of Oil Pipelines Under the Interstate Commerce Act.* (i) Accept any uncontested item that has been filed consistent with Commission regulations and policy;

(ii) Reject any filing, unless accompanied by a request for waiver in conformity with § 385.2001 of this chapter, that patently fails to comply with applicable statutory requirements and with all applicable Commission rules, regulations and orders; and

(iii) Prescribe for carriers the classes of property for which depreciation charges may be properly included under operating expenses, review the fully documented depreciation studies filed by the carriers, and authorize or revise the depreciation rates reflected in the depreciation study with respect to each of the designated classes of property.

(b) *General, Non-Program-Specific Delegated Authority.* (1) Take appropriate action on:

(i) Any notice of intervention or motion to intervene, filed in an uncontested proceeding processed by the Office of Energy Market Regulation;

(ii) Applications for extensions of time to file required filings, reports, data and information and to perform other acts required at or within a specific time by any rule, regulation, license, permit, certificate, or order by the Commission; and

(iii) Filings for administrative revisions to electronic filed tariffs.

(2) Take appropriate action on requests or petitions for waivers of:

(i) Filing requirements for the appropriate statements and reports processed by the Office of Energy Market Regulation under Parts 46, 141, 260 and 357 of this chapter, §§ 284.13 and 284.126 of this chapter, and other relevant Commission orders; and

(ii) Fees prescribed in §§ 381.403 and 381.505 of this chapter in accordance with § 381.106(b) of this chapter.

(3) Undertake the following actions:

(i) Issue reports for public information purposes. Any report issued without Commission approval must:

(A) Be of a noncontroversial nature, and

(B) Contain the statement, ''This report does not necessarily reflect the views of the Commission,'' in bold face type on the cover;

(ii) Issue and sign requests for additional information regarding applications, filings, reports and data processed by the Office of Energy Market Regulation; and

(iii) Accept for filing, data and reports required by Commission regulations, rules or orders, or presiding officers' initial decisions upon which the Commission has taken no further action, if such filings are in compliance with such regulations, rules, orders or decisions and, when appropriate, notify the filing party of such acceptance.

[Order 699, 72 FR 45326, Aug. 14, 2007, as amended by Order 701, 72 FR 61054, Oct. 29, 2007; Order 714, 73 FR 57537, Oct. 3, 2008; Order 766, 77 FR 59747, Oct. 1, 2012]

**§ 375.308   Delegations to the Director of the Office of Energy Projects.**

The Commission authorizes the Director or the Director's designee to:

(a) Take appropriate action on uncontested applications and on applications for which the only motion or

**Federal Energy Regulatory Commission**                    **§ 375.308**

notice of intervention in opposition is filed by a competing preliminary permit or exemption applicant that does not propose and substantiate materially different plans to develop, conserve, and utilize the water resources of the region for the following:

(1) Licenses (including original, new, and transmission line licenses) under part I of the Federal Power Act;

(2) Exemptions from all or part of the licensing requirements of part I of the Federal Power Act; and

(3) Preliminary permits for proposed projects.

(b) Take appropriate action on uncontested applications for:

(1) Amendments (including changes in the use or disposal of water power project lands or waters or in the boundaries of water power projects) to licenses (including original, new, and transmission line licenses) under part I of the Federal Power Act, exemptions from all or part of the requirements of part I of the Federal Power Act, and preliminary permits; and

(2) Surrenders of licenses (including original and new), exemptions, and preliminary permits.

(c) Take appropriate action on the following:

(1) Determinations or vacations with respect to lands of the United States reserved from entry, location, or other disposal under section 24 of the Federal Power Act;

(2) Transfer of a license under section 8 of the Federal Power Act;

(3) Applications for the surrender of transmission line licenses pursuant to part 6 of this chapter;

(4) Motions filed by licensees, permittees, exemptees, applicants, and others requesting an extension of time to file required submittals, reports, data, and information and to do other acts required to be done at or within a specific time period by any rule, regulation, license, exemption, permit, notice, letter, or order of the Commission in accordance with § 385.2008 of this chapter;

(5) Declarations of intent and petitions for declaratory orders concerning the Commission's jurisdiction over a hydropower project under the Federal Power Act;

(6) New or revised exhibits, studies, plans, reports, maps, drawings, or specifications, or other such filings made voluntarily or in response to a term or condition in a preliminary permit, license, or exemption issued for a hydropower project, or in response to the requirements of an order of the Commission or presiding officer's initial decision concerning a hydropower project;

(7) Requests by applicants to withdraw, pursuant to § 385.216 of this chapter, any pleadings under part I of the Federal Power Act and any pleadings related to exemptions from all or part of part I of the Federal Power Act;

(8) Requests by licensees for exemption from:

(i) The requirement of filing FERC Form No. 80, Licensed Projects Recreation, under § 8.11 of this chapter; and

(ii) The fees prescribed in § 381.302(a) of this chapter in accordance with § 381.302(c) of this chapter and the fees in § 381.601 of this chapter, in accordance with § 381.106 of this chapter;

(9) Requests for waivers incidental to the exercise of delegated authority provided the request conforms to the requirements of § 385.2001 of this chapter;

(10) Proposals for the development of water resources projects submitted by other agencies of the Federal government for Commission review or comment. The Director shall direct comments, when necessary, to the sponsoring agency on matters including, but not limited to, the need for, and appropriate size of, any hydroelectric power installation proposed by any other agency of the Federal government;

(11) The reasonableness of disputed agency cost statements pursuant to § 4.303(e) of this chapter.

(d) Issue an order pursuant to section 5 of the Federal Power Act to cancel a preliminary permit if the permittee fails to comply with the specific terms and conditions of the permit; provided:

(1) The Director gives notice to the permittee of probable cancellation no less than 30 days prior to the issuance of the cancellation order, and

(2) The permittee does not oppose the issuance of the cancellation order.

**§ 375.308**                                    **18 CFR Ch. I (4–1–14 Edition)**

(e) Issue an order to revoke an exemption of a small conduit hydroelectric facility from the licensing provisions of part I of the Federal Power Act granted pursuant to § 4.93 of this chapter, or an exemption of a small hydroelectric power project from the licensing provisions of part I of the Federal Power Act granted pursuant to § 4.105 of this chapter if the exemption holder fails to begin or complete actual construction of the exempted facility or project within the time specified in the order granting the exemption or in Commission regulations at § 4.94(c) or § 4.106(c) of this chapter, provided:

(1) The Director gives notice to the exemption holder by certified mail of probable revocation no less than 30 days prior to the issuance of the revocation order, and

(2) The holder of the exemption does not oppose the issuance of the revocation order.

(f) Issue an order pursuant to section 13 of the Federal Power Act to terminate a license granted under part I of the Federal Power Act if the licensee fails to commence actual construction of the project works within the time prescribed in the license, provided:

(1) The Director gives notice by certified mail to the licensee of probable termination no less than 30 days prior to the issuance of the termination order, and

(2) The licensee does not oppose the issuance of the termination order.

(g) Require licensees and applicants for water power projects to make repairs to project works, take any related actions for the purpose of maintaining the safety and adequacy of such works, make or modify emergency action plans, have inspections by independent consultants, and perform other actions necessary to comply with part 12 of this chapter or otherwise protect human life, health, property, or the environment.

(h) For any unlicensed or unexempted hydropower project, take the following actions:

(1) Conduct investigations to ascertain the Commission's jurisdiction.

(2) Make preliminary jurisdictional determinations, and

(3) If a project has been preliminarily determined to require a license, issue

notification of the Commission's jurisdiction; require the filing of a license application; and require that actions necessary to comply with part 12 of this chapter or otherwise protect human life, health, property, or the environment are taken.

(i) Take appropriate action on uncontested settlements among non-Federal parties involving headwater benefits.

(j) Dismiss applications for licenses and approve the withdrawal of applications for hydropower project licenses, in instances where no petition for or notice of intervention contending that licensing is required under part I of the Federal Power Act has been filed and the Director determines that licensing is not required by such Part I.

(k) Reject or dismiss an application filed under Part I of the Federal Power Act or an application for an exemption from some or all of the requirements of Part I of the Federal Power Act if:

(1) An application is patently deficient under § 4.32(e)(2)(i);

(2) A revised application

(i) Does not conform to the requirements of §§ 4.32(a), 4.32(b), or 4.38, under § 4.32(d)(1) or

(ii) If revisions to an application are not timely submitted under § 4.32(e)(1)(iii); or

(3) The applicant fails to provide timely additional information, documents, or copies of submitted materials under § 4.32(g).

(l) Redesignate proceedings, licenses, and other authorizations and filings to reflect changes in the names of persons and municipalities subject to or invoking Commission jurisdiction under the Federal Power Act, where no substantive changes in ownership, corporate structure or domicile, or jurisdictional operation are involved.

(m) Determine payments for headwater benefits from the operation of Federal reservoir projects.

(n) Determine whether to allow a credit against annual charges for the use of government dams or other struc-tures billed to licensees each year for contractual payments for the construc-tion, operation, and maintenance of a Federal dam.

(o) Prepare and issue comments on general water policy and planning

1094

**Federal Energy Regulatory Commission**                    **§ 375.308**

issues for the use of the Director of the Water Resources Council or the Assistant Secretaries of the Department of Energy.

(p) Prepare and transmit letters concerning power site lands to the Bureau of Land Management and the U.S. Geological Survey; respond to routine requests for information and any non-docketed correspondence; prepare and transmit letters requesting comments or additional information on applications for hydropower project licenses, preliminary permits, exemptions, amendments of licenses, permits, or exemptions, and other similar matters from Federal, state, and local agencies, from applicants, and from other appropriate persons; and prepare and transmit letters regarding whether transmission lines are works of a hydropower project and are required to be licensed.

(q) Reject an application or other filing under Section 405 of the Public Utility Regulatory Policies Act of 1978, unless accompanied by a request for waiver in conformity with §385.2001 of this chapter, if it fails patently to comply with applicable statutory requirements or Commission rules, regulations, and orders.

(r) Pass upon petitions filed under §§292.210 and 292.211 of this chapter.

(s) Make any preliminary determination of inconsistency between a fish and wildlife agency's fish and wildlife recommendation and applicable law, and conduct through staff whatever consultation with the agency that is necessary or appropriate in order to attempt to resolve any inconsistency, under section 10(j) of the Federal Power Act, and to take such related actions as are required under that section.

(t) Waive the pre-filing consultation requirements in §§4.38 and 16.8 of this title whenever the Director, in his discretion, determines that an emergency so requires, or that the potential benefit of expeditiously considering a proposed improvement in safety, environmental protection, efficiency, or capacity outweighs the potential benefit of requiring completion of the consultation process prior to the filing of an application.

(u) Approve, on a case-specific basis, and issue such orders as may be necessary in connection with the use of alternative procedures, under §4.34(i) of this chapter, for the development of an application for an original, new or subsequent license, exemption, or license amendment subject to the pre-filing consultation process, and assist in the pre-filing consultation and related processes.

(v) Take appropriate action on the following types of uncontested applications for authorizations and uncontested amendments to applications and authorizations and impose appropriate conditions:

(1) Applications or amendments requesting authorization for the construction or acquisition and operation of facilities that have a construction or acquisition cost less than the limits specified in column 2 of table I in §157.208(d) of this chapter;

(2) Applications by a pipeline for the abandonment of pipeline facilities;

(3) Applications for temporary certificates for facilities pursuant to §157.17 of this chapter;

(4) Petitions to amend certificates to conform to actual construction;

(5) Applications for temporary certificates for facilities pursuant to §157.17 of this chapter;

(6) Dismiss any protest to prior notice filings made pursuant to §157.205 of this chapter and involving pipeline facilities that does not raise a substantive issue and fails to provide any specific detailed reason or rationale for the objection;

(7) Applications for temporary or permanent certificates (and for amendments thereto) for the transportation, exchange or storage of natural gas, provided that the cost of construction of the applicant's related facility is less than the limits specified in column 2 of table 1 in §157.208(d) of this chapter; and

(8) Applications for blanket certificates of public convenience and necessity pursuant to subpart F of part 157 of this chapter, including waiver of project cost limitations in §§157.208 and 157.215 of this chapter, and the convening of informal conferences during the 30-day reconciliation period pursuant to the procedures in §157.205(f).

(w) Take appropriate action on the following:

(1) Any notice of intervention or petition to intervene, filed in an uncontested application for pipeline facilities;

(2) An uncontested request from one holding an authorization, granted pursuant to the Director's delegated authority, to vacate all or part of such authorization;

(3) Petitions to permit after an initial 60-day period one additional 60-day period of exemption pursuant to § 284.264(b) of this chapter where the application or extension arrives at the Commission later than 45 days after the commencement of the initial period of exemption when the emergency requires installation of facilities;

(4) Applications for extensions of time to file required reports, data, and information and to perform other acts required at or within a specific time by any rule, regulation, license, permit, certificate, or order by the Commission; and

(5) Requests for waiver of the landowner notification requirements in § 157.203(d) of this chapter.

(x) Undertake the following actions:

(1) Compute, for each calendar year, the project limits specified in table I of § 157.208 and table II of § 157.215(a) of this chapter, adjusted for inflation, and publish such limits as soon as possible thereafter in the FEDERAL REGISTER;

(2) Issue reports for public information purposes. Any report issued without Commission approval must:

(i) Be of a noncontroversial nature, and

(ii) Contain the statement, "This report does not necessarily reflect the view of the Commission," in bold face type on the cover;

(3) Issue and sign deficiency letters regarding natural gas applications;

(4) Accept for filing, data and reports required by Commission orders, or presiding officers' initial decisions upon which the Commission has taken no further action, if such filings are in compliance with such orders or decisions and, when appropriate, notify the filing party of such acceptance;

(5) Reject requests which patently fail to comply with the provisions of 157.205(b) of this chapter;

(6) Take appropriate action on requests or petitions for waivers of any action incidental to the exercise of delegated authority, including waiver of notice as provided in section 4(d) of the Natural Gas Act, provided the request conforms to the requirements of § 385.2001 of this chapter; and

(7) Take whatever steps are necessary to ensure the protection of all environmental resources during the construction or operation of natural gas facilities, including authority to design and implement additional or alternative measures and stop work authority.

(y) Take appropriate action on the following:

(1) Any action incidental to the exercise of delegated authority, including waiver of notice as provided in section 4(d) of the Natural Gas Act, provided the request conforms to the requirements of § 385.2001 of this chapter; and

(2) Requests or petitions for waivers of filing requirements for statements and reports under §§ 260.8 and 260.9 of this chapter.

(z) Approve, on a case-specific basis, and make such decisions and issue guidance as may be necessary in connection with the use of the pre-filing procedures in § 157.21, "Pre-filing procedures and review process for LNG terminal facilities and other natural gas facilities prior to filing of applications."

(aa) Take the following actions to implement part 5 of this chapter on or after October 23, 2003:

(1) Act on requests for approval to use the application procedures of parts 4 or 16, pursuant to § 5.3 of this chapter;

(2) Approve a potential license applicant's proposed study plan with appropriate modifications pursuant to § 5.13 of this chapter;

(3) Resolve formal study disputes pursuant to § 5.14 of this chapter;

(4) Resolve disagreements brought pursuant to § 5.15 of this chapter.

(bb) Establish a schedule for each Federal agency or officer, or State agency or officer acting pursuant to delegated Federal authority, to issue or deny Federal authorizations required for natural gas projects subject to section 3 or 7 of the Natural Gas Act.

[Order 492, 53 FR 16065, May 5, 1988]

**Federal Energy Regulatory Commission**     **§ 385.713**

(d) *Failure to take exceptions results in waiver*—(1) *Complete waiver.* If a participant does not file a brief on exceptions within the time permitted under this section, any objection to the initial decision by the participant is waived.

(2) *Partial waiver.* If a participant does not object to a part of an initial decision in a brief on exceptions, any objections by the participant to that part of the initial decision are waived.

(3) *Effect of waiver.* Unless otherwise ordered by the Commission for good cause shown, a participant who has waived objections under paragraph (d)(1) or (d)(2) of this section to all or part of an initial decision may not raise such objections before the Commission in oral argument or on rehearing.

[Order 225, 47 FR 19022, May 3, 1982, as amended by Order 375, 49 FR 21316, May 21, 1984; Order 575, 60 FR 4860, Jan. 25, 1995]

**§ 385.712 Commission review of initial decisions in the absence of exceptions (Rule 712).**

(a) *General rule.* If no briefs on exceptions to an initial decision are filed within the time established by rule or order under Rule 711, the Commission may, within 10 days after the expiration of such time, issue an order staying the effectiveness of the decision pending Commission review.

(b) *Briefs and argument.* When the Commission reviews a decision under this section, the Commission may require that participants file briefs or present oral arguments on any issue.

(c) *Effect of review.* After completing review under this section, the Commission will issue a decision which is final for purposes of rehearing under Rule 713.

[Order 225, 47 FR 19022, May 3, 1982, as amended by Order 375, 49 FR 21316, May 21, 1984; Order 575, 60 FR 4860, Jan. 25, 1995]

**§ 385.713 Request for rehearing (Rule 713).**

(a) *Applicability.* (1) This section applies to any request for rehearing of a final Commission decision or other final order, if rehearing is provided for by statute, rule, or order.

(2) For the purposes of rehearing under this section, a final decision in any proceeding set for hearing under

subpart E of this part includes any Commission decision:

(i) On exceptions taken by participants to an initial decision;

(ii) When the Commission presides at the reception of the evidence;

(iii) If the initial decision procedure has been waived by consent of the participants in accordance with Rule 710;

(iv) On review of an initial decision without exceptions under Rule 712; and

(v) On any other action designated as a final decision by the Commission for purposes of rehearing.

(3) For the purposes of rehearing under this section, any initial decision under Rule 709 is a final Commission decision after the time provided for Commission review under Rule 712, if there are no exceptions filed to the decision and no review of the decision is initiated under Rule 712.

(b) *Time for filing; who may file.* A request for rehearing by a party must be filed not later than 30 days after issuance of any final decision or other final order in a proceeding.

(c) *Content of request.* Any request for rehearing must:

(1) State concisely the alleged error in the final decision or final order;

(2) Conform to the requirements in Rule 203(a), which are applicable to pleadings, and, in addition, include a separate section entitled ''Statement of Issues,'' listing each issue in a separately enumerated paragraph that includes representative Commission and court precedent on which the party is relying; any issue not so listed will be deemed waived; and

(3) Set forth the matters relied upon by the party requesting rehearing, if rehearing is sought based on matters not available for consideration by the Commission at the time of the final decision or final order.

(d) *Answers.* (1) The Commission will not permit answers to requests for rehearing.

(2) The Commission may afford parties an opportunity to file briefs or present oral argument on one or more issues presented by a request for rehearing.

(e) *Request is not a stay.* Unless otherwise ordered by the Commission, the filing of a request for rehearing does

§ 385.714                                    18 CFR Ch. I (4–1–14 Edition)

not stay the Commission decision or order.

(f) *Commission action on rehearing.* Unless the Commission acts upon a request for rehearing within 30 days after the request is filed, the request is denied.

[Order 225, 47 FR 19022, May 3, 1982, as amended by Order 375, 49 FR 21316, May 21, 1984; Order 575, 60 FR 4860, Jan. 25, 1995; 60 FR 16567, Mar. 31, 1995; Order 663, 70 FR 55725, Sept. 23, 2005; 71 FR 14642, Mar. 23, 2006]

§ 385.714  Certified questions (Rule 714).

(a) *General rule.* During any proceeding, a presiding officer may certify or, if the Commission so directs, will certify, to the Commission for consideration and disposition any question arising in the proceeding, including any question of law, policy, or procedure.

(b) *Notice.* A presiding officer will notify the participants of the certification of any question to the Commission and of the date of any certification. Any such notification may be given orally during the hearing session or by order.

(c) *Presiding officer's memorandum; views of the participants.* (1) A presiding officer should solicit, to the extent practicable, the oral or written views of the participants on any question certified under this section.

(2) The presiding officer must prepare a memorandum which sets forth the relevant issues, discusses all the views of participants, and recommends a disposition of the issues.

(3) The presiding officer must append to any question certified under this section the written views submitted by the participants, the transcript pages containing oral views, and the memorandum of the presiding officer.

(d) *Return of certified question to presiding officer.* If the Commission does not act on any certified question within 30 days after receipt of the certification under paragraph (a) of this section, the question is deemed returned to the presiding officer for decision in accordance with the other provisions of this subpart.

(e) *Certification not suspension.* Unless otherwise directed by the Commission or the presiding officer, certification

under this section does not suspend the proceeding.

§ 385.715  Interlocutory appeals to the Commission from rulings of presiding officers (Rule 715).

(a) *General rule.* A participant may not appeal to the Commission any ruling of a presiding officer during a proceeding, unless the presiding officer under paragraph (b) of this section, or the motions Commissioner, under paragraph (c) of this section, finds extraordinary circumstances which make prompt Commission review of the contested ruling necessary to prevent detriment to the public interest or irreparable harm to any person.

(b) *Motion to the presiding officer to permit appeal.* (1) Any participant in a proceeding may, during the proceeding, move that the presiding officer permit appeal to the Commission from a ruling of the presiding officer. The motion must be made within 15 days of the ruling of the presiding officer and must state why prompt Commission review is necessary under the standards of paragraph (a) of this section

(2) Upon receipt of a motion to permit appeal under subparagraph (a)(1) of this section, the presiding officer will determine, according to the standards of paragraph (a) of this section, whether to permit appeal of the ruling to the Commission. The presiding officer need not consider any answer to this motion.

(3) Any motion to permit appeal to the Commission of an order issued under Rule 604, or appeal of a ruling under paragraph (a) or (b) of Rule 905, must be granted by the presiding officer.

(4) A presiding officer must issue an order, orally or in writing, containing the determination made under paragraph (b)(2) of this section, including the date of the action taken.

(5) If the presiding officer permits appeal, the presiding officer will transmit to the Commission:

(i) A memorandum which sets forth the relevant issues and an explanation of the rulings on the issues; and

(ii) the participant's motion under paragraph (b)(1) of this section and any answer permitted to the motion.

(g) *The interpretation*—1) Except as provided in paragraph (g)(2) of this section, the General Counsel will provide a copy of his or her written interpretation of the NGPA or rule as applied to the act, transaction, or circumstance presented upon the person who made the request for the interpretation and upon persons named in the request as direct participants in the act, transaction, or circumstance.

(2) The General Counsel may determine not to issue an interpretation, in which case the person who made the request and direct participants as specified in the request will be notified in writing of the decision not to issue an interpretation, and the reason for the decision.

(3) Only those persons to whom an interpretation is specifically addressed and other persons who are named in the request, who have been informed by the applicant for an interpretation of the pendency of the request and who are direct participants in the act, transaction or circumstance presented, may rely upon it. The effectiveness of an interpretation depends entirely on the accuracy of the facts presented to the General Counsel. If a material or relevant fact has been misrepresented or omitted or if any material or relevant fact changes after an interpretation is issued or if the action taken differs from the facts presented in the request, the interpretation may not be relied upon by any person.

(4) An interpretation may be rescinded or modified prospectively at any time. A rescission or modification is effected by notifying persons entitled to rely on the interpretation at the address contained in the original request.

(5) Any interpretation based on the NGPA or a rule issued thereunder in effect at the time of issuance may be relied upon only to the extent such law or rule remains in effect.

(6) Except as provided in paragraphs (g)(3), (g)(4) and (g)(5) of this section, the Staff will not recommend any action to the Commission which is inconsistent with the position espoused in the interpretation. The interpretation of the General Counsel is not the interpretation of the Commission. An interpretation provided by the General Counsel is given without prejudice to the Commission's authority to consider the same or like question and to issue a declaratory order to take other action which has the effect of rescinding, revoking, or modifying the interpretation of the General Counsel.

(h) *Appeal.* There is no appeal to the Commission of an interpretation.

(i) *Interpretative rules.* Upon the petition of any person or upon its own motion, the Commission may publish in the FEDERAL REGISTER an interpretative rule regarding any question arising under the NGPA or a rule promulgated thereunder. Any person is entitled to rely upon an interpretative rule.

(j) *Applications for adjustments treated as requests for interpretations.* Except for the notification provisions of paragraph (d)(5) of this section, the provisions of this section apply to any petition for an adjustment which is deemed a request for an interpretation under Rule 1117. Notice to all parties to an adjustment proceeding under subpart K of this part that is deemed to be a request for an interpretation will be given under Rule 1117(d)(1).

[Order 225, 47 FR 19022, May 3, 1982, as amended by Order 394, 49 FR 35366, Sept. 7, 1984; Order 737, 75 FR 43405, July 26, 2010]

### § 385.1902   Appeals from action of staff (Rule 1902).

(a) Any staff action (other than a decision or ruling of presiding officer, as defined in Rule 102(e)(1), made in a proceeding set for hearing under subpart E of this part) taken pursuant to authority delegated to the staff by the Commission is a final agency action that is subject to a request for rehearing under Rule 713 (request for rehearing).

(b) All appeals of staff action that were timely filed prior to December 3, 1990 and that had not been acted upon by the Commission on their substantive merits are deemed to be timely filed requests for rehearing of final agency action. All notices issued by the Commission prior to December 3, 1990 stating the Commission's intent to act on appeals of staff action such that they are not deemed denied by the expiration of a 30-day period after the filing of the appeal, are deemed to be orders granting rehearing of final agency

**§ 1501.2  Apply NEPA early in the process.**

Agencies shall integrate the NEPA process with other planning at the earliest possible time to insure that planning and decisions reflect environmental values, to avoid delays later in the process, and to head off potential conflicts. Each agency shall:

(a) Comply with the mandate of section 102(2)(A) to ''utilize a systematic, interdisciplinary approach which will insure the integrated use of the natural and social sciences and the environmental design arts in planning and in decisionmaking which may have an impact on man's environment,'' as specified by § 1507.2.

(b) Identify environmental effects and values in adequate detail so they can be compared to economic and technical analyses. Environmental documents and appropriate analyses shall be circulated and reviewed at the same time as other planning documents.

(c) Study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources as provided by section 102(2)(E) of the Act.

(d) Provide for cases where actions are planned by private applicants or other non-Federal entities before Federal involvement so that:

(1) Policies or designated staff are available to advise potential applicants of studies or other information foreseeably required for later Federal action.

(2) The Federal agency consults early with appropriate State and local agencies and Indian tribes and with interested private persons and organizations when its own involvement is reasonably foreseeable.

(3) The Federal agency commences its NEPA process at the earliest possible time.

**§ 1501.3  When to prepare an environmental assessment.**

(a) Agencies shall prepare an environmental assessment (§ 1508.9) when necessary under the procedures adopted by individual agencies to supplement these regulations as described in § 1507.3. An assessment is not necessary if the agency has decided to prepare an environmental impact statement.

(b) Agencies may prepare an environmental assessment on any action at any time in order to assist agency planning and decisionmaking.

**§ 1501.4  Whether to prepare an environmental impact statement.**

In determining whether to prepare an environmental impact statement the Federal agency shall:

(a) Determine under its procedures supplementing these regulations (described in § 1507.3) whether the proposal is one which:

(1) Normally requires an environmental impact statement, or

(2) Normally does not require either an environmental impact statement or an environmental assessment (categorical exclusion).

(b) If the proposed action is not covered by paragraph (a) of this section, prepare an environmental assessment (§ 1508.9). The agency shall involve environmental agencies, applicants, and the public, to the extent practicable, in preparing assessments required by § 1508.9(a)(1).

(c) Based on the environmental assessment make its determination whether to prepare an environmental impact statement.

(d) Commence the scoping process (§ 1501.7), if the agency will prepare an environmental impact statement.

(e) Prepare a finding of no significant impact (§ 1508.13), if the agency determines on the basis of the environmental assessment not to prepare a statement.

(1) The agency shall make the finding of no significant impact available to the affected public as specified in § 1506.6.

(2) In certain limited circumstances, which the agency may cover in its procedures under § 1507.3, the agency shall make the finding of no significant impact available for public review (including State and areawide clearinghouses) for 30 days before the agency makes its final determination whether to prepare an environmental impact statement and before the action may begin. The circumstances are:

§ 1508.6    **40 CFR Ch. V (7–1–14 Edition)**

**§ 1508.6  Council.**

*Council* means the Council on Environmental Quality established by title II of the Act.

**§ 1508.7  Cumulative impact.**

*Cumulative impact* is the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.

**§ 1508.8  Effects.**

*Effects* include:

(a) Direct effects, which are caused by the action and occur at the same time and place.

(b) Indirect effects, which are caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable. Indirect effects may include growth inducing effects and other effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air and water and other natural systems, including ecosystems.

Effects and impacts as used in these regulations are synonymous. Effects includes ecological (such as the effects on natural resources and on the components, structures, and functioning of affected ecosystems), aesthetic, historic, cultural, economic, social, or health, whether direct, indirect, or cumulative. Effects may also include those resulting from actions which may have both beneficial and detrimental effects, even if on balance the agency believes that the effect will be beneficial.

**§ 1508.9  Environmental assessment.**

*Environmental assessment:*

(a) Means a concise public document for which a Federal agency is responsible that serves to:

(1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.

(2) Aid an agency's compliance with the Act when no environmental impact statement is necessary.

(3) Facilitate preparation of a statement when one is necessary.

(b) Shall include brief discussions of the need for the proposal, of alternatives as required by section 102(2)(E), of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted.

**§ 1508.10  Environmental document.**

*Environmental document* includes the documents specified in §1508.9 (environmental assessment), §1508.11 (environmental impact statement), §1508.13 (finding of no significant impact), and §1508.22 (notice of intent).

**§ 1508.11  Environmental impact statement.**

*Environmental impact statement* means a detailed written statement as required by section 102(2)(C) of the Act.

**§ 1508.12  Federal agency.**

*Federal agency* means all agencies of the Federal Government. It does not mean the Congress, the Judiciary, or the President, including the performance of staff functions for the President in his Executive Office. It also includes for purposes of these regulations States and units of general local government and Indian tribes assuming NEPA responsibilities under section 104(h) of the Housing and Community Development Act of 1974.

**§ 1508.13  Finding of no significant impact.**

*Finding of no significant impact* means a document by a Federal agency briefly presenting the reasons why an action, not otherwise excluded (§1508.4), will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared. It shall include the environmental assessment or a summary of it and shall note any other environmental documents related to it (§1501.7(a)(5)). If the assessment is included, the finding need not

repeat any of the discussion in the assessment but may incorporate it by reference.

### § 1508.14   Human environment.

*Human environment* shall be interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment. (See the definition of "effects" (§ 1508.8).) This means that economic or social effects are not intended by themselves to require preparation of an environmental impact statement. When an environmental impact statement is prepared and economic or social and natural or physical environmental effects are interrelated, then the environmental impact statement will discuss all of these effects on the human environment.

### § 1508.15   Jurisdiction by law.

*Jurisdiction by law* means agency authority to approve, veto, or finance all or part of the proposal.

### § 1508.16   Lead agency.

*Lead agency* means the agency or agencies preparing or having taken primary responsibility for preparing the environmental impact statement.

### § 1508.17   Legislation.

*Legislation* includes a bill or legislative proposal to Congress developed by or with the significant cooperation and support of a Federal agency, but does not include requests for appropriations. The test for significant cooperation is whether the proposal is in fact predominantly that of the agency rather than another source. Drafting does not by itself constitute significant cooperation. Proposals for legislation include requests for ratification of treaties. Only the agency which has primary responsibility for the subject matter involved will prepare a legislative environmental impact statement.

### § 1508.18   Major Federal action.

*Major Federal action* includes actions with effects that may be major and which are potentially subject to Federal control and responsibility. Major reinforces but does not have a meaning independent of significantly (§ 1508.27). Actions include the circumstance where the responsible officials fail to act and that failure to act is reviewable by courts or administrative tribunals under the Administrative Procedure Act or other applicable law as agency action.

(a) Actions include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies; new or revised agency rules, regulations, plans, policies, or procedures; and legislative proposals (§§ 1506.8, 1508.17). Actions do not include funding assistance solely in the form of general revenue sharing funds, distributed under the State and Local Fiscal Assistance Act of 1972, 31 U.S.C. 1221 *et seq.*, with no Federal agency control over the subsequent use of such funds. Actions do not include bringing judicial or administrative civil or criminal enforcement actions.

(b) Federal actions tend to fall within one of the following categories:

(1) Adoption of official policy, such as rules, regulations, and interpretations adopted pursuant to the Administrative Procedure Act, 5 U.S.C. 551 *et seq.;* treaties and international conventions or agreements; formal documents establishing an agency's policies which will result in or substantially alter agency programs.

(2) Adoption of formal plans, such as official documents prepared or approved by federal agencies which guide or prescribe alternative uses of Federal resources, upon which future agency actions will be based.

(3) Adoption of programs, such as a group of concerted actions to implement a specific policy or plan; systematic and connected agency decisions allocating agency resources to implement a specific statutory program or executive directive.

(4) Approval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as federal and federally assisted activities.

### § 1508.19   Matter.

*Matter* includes for purposes of part 1504:

***Delaware RiverKeeper Network, et al.*  v. *FERC*     Docket No. CP13-551**
**D.C. Cir. No. 16-1092**

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), and the Court's Administrative

Order Regarding Electronic Case Filing, I hereby certify that I have, this 9th

day of August 2016, served the foregoing upon the counsel listed in the

Service Preference Report via email through the Court's CM/ECF system or

via U.S. Mail, as indicated below:

Pamela Stacy Goodwin                          Email
Saul Ewing LLP
650 College Road East
Suite 4000
Princeton, NJ 08540

Patrick F. Nugent                             Email
Saul Ewing LLP
650 College Road East
Suite 4000
Princeton, NJ 08540

Aaron Joseph Stemplewicz                      Email
Delaware Riverkeeper Network
925 Canal Street
Suite 3701
Bristol, PA

John Francis Stoviak                          Email
Saul Ewing LLP
650 College Road East
Suite 4000
Princeton, NJ 08540

2

Elizabeth Utz Witmer                                Email
Saul Ewing LLP
650 College Road East
Suite 4000
Princeton, NJ 08540




                                    /s/  Lisa B. Luftig
                                    Lisa B. Luftig
                                    Attorney



Federal Energy Regulatory
    Commission
Washington, D.C.  20426
Tel: (202) 502-6791
Fax: (202) 273-0901